Jody C. Moore, 192601
Nicolette Paullin, 291110
**JOHNSON MOORE**
100 E. Thousand Oaks Boulevard, Suite 229
Thousand Oaks, CA 91360
Telephone:   (805) 988-3661
Facsimile:   (805) 494-4777
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERT SARNOFF ("MR. SARNOFF"), by and through his Successor in Interest KENNETH SARNOFF; KENNETH SARNOFF, individually; and DOUGLAS SARNOFF.<br><br>                    Plaintiffs,<br>vs.<br><br>SILVERADO SENIOR LIVING, INC.; SILVERADO SENIOR LIVING MANAGEMENT, INC., SUBTENANT 330 NORTH HAYWORTH AVENUE, LLC; LOREN SHOOK, individually; JASON RUSSO, individually; NANCY SARNOFF, a Nominal Defendant only; and Does 1-25, inclusive,<br>                    Defendants. | CASE NO.: 2:21-cv-00070-JAK-JPR<br><br>[Removal from Superior Court California, County of Los Angeles Case No. 20STCV47409<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND; [Proposed ] ORDER**<br><br><br><br>Date: June 14, 2021<br>Time: 8:30 a.m.<br>Dept: 10B |

TO THE COURT AND TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE AND NOTICE IS HEREBY GIVEN THAT on June 14, 2021 at 8:30 a.m., in Courtroom 10B of the above-entitled Court, located at 350 West First Street, Los Angeles, California 90012, Plaintiffs ALBERT

SARNOFF ("MR. SARNOFF"), by and through his Successor in Interest KENNETH SARNOFF; KENNETH SARNOFF, individually; and DOUGLAS SARNOFF, move this Court for an order remanding this action to the Los Angeles County Superior Court. Plaintiffs make this motion pursuant to 28 U.S.C. § 1447(c), because this Court lacks federal subject matter jurisdiction,[1] as well as in the interest of judicial economy as it is one of seven (7) related cases that were filed in the Los Angeles County Superior Court and are to be consolidated.[2]

Defendants justify their removal of this case to federal court on the grounds of diversity and also attempt to create federal subject matter jurisdiction in two separate ways: (1) the Court has original jurisdiction under 28 U.S.C. § 1331 based on the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§247d-6d and 247d-6e (the "Prep Act") and (2) pursuant to 28 U.S.C. §1442(a)(1) because, they claim, at all relevant times they were "acting under" the direction of a federal officer. Because Defendants' arguments do not have any merit, this case should be remanded to state court.

This Motion is based on this Notice of Motion and Motion to Remand, the accompanying Memorandum of Points and Authorities, the Declaration of Jody C. Moore, the Proposed Order, all records, and papers on file in this action, any oral argument, and any other evidence that the Court may consider in hearing this motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place via written correspondence from Plaintiff's counsel's to Defense counsel on February 5, 2021. We stated our position and invited Defense

---

[2]  This case is related to *Apothaker vs. Silverado Senior Living, Inc. et al.*; case no. 20STCV47127; *Khorsandi vs. Silverado Senior Living, Inc. et al.*; case no. 20STCV47202; *Palamides vs. Silverado Senior Living, Inc. et al.*; case no. 20STCV47226; *Ringo vs. Silverado Senior Living, Inc. et al.*; case no. 20STCV47357; *Lebow vs. Silverado Senior Living, Inc. et al.*; case no. 20STCV47238; and *Clack vs. Silverado Senior Living, Inc. et al.*; case no. 20STCV4788.

counsel to meet and confer, but unfortunately, we did not hear back from Defense counsel and Plaintiffs proceeded to file this Motion.

Dated: February 26, 2021                    JOHNSON MOORE

                                            By:   /s/ Jody C. Moore
                                                  Jody C. Moore
                                                  Nicolette Paullin
                                                  Attorneys for Plaintiffs

**NOTICE OF MOTION AND MOTION TO REMAND**

TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ........................................ 1

I.      INTRODUCTION ........................................................................... 1

II.     PROCEDURAL HISTORY ............................................................. 5

III.    MR. SARNOFF'S COMPLAINT ................................................... 5

IV.     LEGAL STANDARDS FOR REMOVAL AND REMAND ...................... 7

V.      THE DISTRICT COURT DOES NOT HAVE JURISDICTION
        PURSUANT TO 28 U.S.C. § 1332 BECAUSE DEFENDANT FAILS TO
        MEET THE "COMPLETE DIVERSITY" REQUIREMENT ..................... 8

VI.     PLAINTIFFS' COMPLAINT DOES NOT PRESENT ANY FEDERAL
        QUESTION AND THEREFORE THIS COURT DOES NOT HAVE
        FEDERAL QUESTION JURISDICTION UNDER 28 U.S.C. § 1331VI. 10

VII.    THE PREP ACT DOES NOT APPLY AND SHOULD NOT SERVE AS A
        BASIS FOR JURISDICTION ................................................................ 13

        A.      Plaintiffs do not allege claims based on the use of a "Covered
                Countermeasure" and therefore the PREP Act is not implicated ..... 13

        B.      Defendants are not "program planners" nor "qualified persons" under
                the PREP act ........................................................................................ 16

        C.      The Department of Health & Human Services' Advisory Opinion
                shows the PREP Act does not apply to this case ............................... 17

VIII.   COMPLETE PREEMPTION DOES NOT APPLY IN THIS CASE ......... 18

        A.      General rules of federal question jurisdiction favor remanding the case
                to state court ....................................................................................... 19

        B.      "Complete Preemption" as an exception to the general rule against
                federal question jurisdiction is not implicated in this case .............. 19

IX.     "FEDERAL OFFICER" REMOVAL PURSUANT TO 28 U.S.C.
        §1442(a)(1) IS NOT SUPPORTED .......................................................... 22

**NOTICE OF MOTION AND MOTION TO REMAND**

A.   Defendants Were not "Acting Under" the Direction of a Federal
Officer ................................................................................................. 23

B.   Defendants did not establish a colorable defense based upon federal
law ...................................................................................................... 26

XI.   CONCLUSION ............................................................................................. 27

**NOTICE OF MOTION AND MOTION TO REMAND**

TABLE OF AUTHORITIES

**Cases**

*Beneficial Nat'l Bank v. Anderson*,

    539 U.S. 1, 6 (2003) ............................................................. 8, 19

*California v. AbbVie Inc.*,

    390 F. Supp. 3d 1176, 1180 (N.D. Cal. 2019) ........................... 19

*Casabianca v. The Mount Sinai Medical Center*,

    2014 WL 1043521 ............................................................. 15, 16

*Caterpillar Inc. v. Williams*,

    482 U.S. 386, 392-93 S.Ct. 2425, 2430 (1987).................. 8, 10, 11, 18, 19

*City of Oakland v. BP PLC*,

    969 F.3d 895, 907 (9th Cir. 2020)........................................ 18

*Davis v. South Carolina*,

    107 U.S. 597, 600 (1883) ................................................... 23

*Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*

    F. Supp. 3d—, 2020 WL 4671091, at *13 ............................... 25

*Estate of Manzo v. County of San Diego*,

    2008 U.S. Dist. LEXIS 67467 ............................................... 10

*Fidelitad, Inc. v. Insitu, Inc.*,

    904 F.3d 1095, 1099, 1100 (9th Cir. 2018)................................ 4, 22, 23, 24

*Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*,

    538 F.3d 594, 596 (7th Cir. 2008)........................................... 19

*Gaus v. Miles, Inc.*,

    980 F.2d 564, 566 (9th Cir. 1992)........................................... 8

**NOTICE OF MOTION AND MOTION TO REMAND**

*Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*,

    599 F.3d 1102, 1107 (9th Cir. 2010)........................................................8, 19

*Grynberg v. Kinder Morgan, Ltd. P'ship*,

    805 F.3d 901, 905 (10th Cir. 2015)............................................................8

*Gully v. First Nat'l Bank in Meridian*,

    299 U.S. 109, 112-113 (1936)...................................................................10

*Herb Goetz & Marlen Horn Associates, Inc., In re*,

    120 F.3d 268 (9th Cir. 1997).......................................................................12

*Jackie Saldana v. Glenhaven Healthcare LLC*

    (C.D. Cal., Oct. 14, 2020, No. CV205631FMOMAAX)

    2020 WL 6713995, at *2..............................................................................18

*Kehler v. Hood*,

    2012 WL 1945952 (E.D. Mo. 2012),.........................................15, 16, 19, 20

*Lee v. AM. Nat'l Ins. Co.*, 260 F.3d 997, 1004

    (9th Cir. 2001)     .............................................................................2, 7, 8

*Libhart v. Santa Monica Dairy Co.*,

    592 F.2d 1062, 1064 (9th Cir. 1979)...........................................................7

*Louisville & Nashville R. Co.*,

    211 U.S. at 152     ..................................................................................10, 11

*Marin General Hosp. v. Modesto & Empire Traction*,

    581 F.3d 941 (9th Cir. 2009)..................................................................8, 19

*Maryland v. Soper*,

    270 U.S. 9, 30 (1926) .................................................................................23

iv

**NOTICE OF MOTION AND MOTION TO REMAND**

*Merrell Dow Pharm. Inc. v. Thompson*,

    478 U.S. 804, 808 (1986) ........................................................................ 10

*Metro. Life Ins. Co.*,

    481 U.S. at 63 ........................................................................................ 12

*M/ V American Queen v. San Diego Marine Constr. Corp.*,

    708 F.2d 1483, 1491 (9th Cir.1983)." ...................................................... 12

*N.G. v. Downey Regional Medical Center*,

    140 F. Supp. 3d 1036, 1038, 1036, 1040, 1041 ................................... 22, 23

*Newman-Green, Inc. v. Alfonzo-Larrain*,

    490 U.S. 826 (1989) ................................................................................ 8

*Provincial Gov't of Marinduque v. Placer Dome, Inc.*,

    582 F.3d 1083, 1087 (9th Cir. 2009) ...................................................... 19

*Parker v. St. Lawrence County Pub. Health Dept.*,

    102 A.D.3d 140 (N.Y. App. Div. 2012 ...................................................... 15

*Panther Brands, LLC v. Indy Racing League, LLC*,

    827 F.3d 586, 590 (7th Cir. 2016) ........................................................ 23

*Riggs v. Airbus Helicopters, Inc.*,

    939 F.3d 981, 985 (9th Cir. 2019) .......................................................... 24

*Shamrock Oil & Gas Corp. v. Sheets*,

    313 U.S. 100, 108–09 (1941) .................................................................. 19

*Strawbridge v. Curtiss*,

    7 U.S. 267 (1806).  ................................................................................ 2

*United States v. Mead Corp.*,

    533 U.S. 218, 226–27 (2001) ................................................................ 21

v

**NOTICE OF MOTION AND MOTION TO REMAND**

*Vaccarino v. Aetna, Inc.*,

    No. EDCV1802349JGBSHKX, 2018 WL 6249707, at *5 (C.D. Cal. Nov. 29, 2018) ........................................................................................... 24

*Watson v. Philip Morris Cos., Inc.*,

    551 U.S. 142, 151, 152-53 (2007) ...................................................... 23, 24

*Wayne v. DHL Worldwide Express*,

    294 F.3d 1179, 1184 (9th Cir. 2002) ......................................................... 11

*Wisconsin Dep't of Corrections v. Schacht*,

    524 U.S. 381, 391-92 (1998) ...................................................................... 2

**Federal Statutes**

28 U.S.C.

    §1331 ............................................................................... 2, 4, 10, 11

    §1332 ................................................................................... 2, 8, 10

    §1332(a) ........................................................................................... 8

    § 1332(c) ....................................................................................... 8, 9

    §1441(a) ..................................................................................... 4, 8, 9

    §1442(a) ......................................................................................... 12

    §1442(a)(1) ........................................................... 4, 22, 23, 24, 25

    § 1447(c) ....................................................................................... 1, 5

29 U.S.C.

    §1331 ............................................................................................. 16

42 U.S.C.

    §247d-6d ..................................................................................... 2, 11

    § 247d-6d(a)(1) ........................................................................ 13, 26

    § 247d-6d(a)(1), (2)(B), (i)(2), (i)(6), (i)(8) ................................. 16

**NOTICE OF MOTION AND MOTION TO REMAND**

§ 247d-6d(a)(2)(B) ...................................................................... 13

§247d6e(a) ................................................................................. 21

§247d6e(b) ................................................................................. 21

§247d-6e ................................................................................. 2, 2

§247d-6d(e)(1) ........................................................................... 20

Federal Rule of Evidence 201 ....................................................... 12

**State Statutes**

California Civil Code of Procedure

§ 377.11 ...................................................................................... 9

§ 377.32. ................................................................................. 9, 10

California Probate Code

§6401 ........................................................................................... 9

§13006 .......................................................................................... 9

Welfare & Inst. Code.

§15600 ...................................................................................... 2, 5

**NOTICE OF MOTION AND MOTION TO REMAND**

## MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to 28 U.S.C. § 1447(c), Plaintiffs ALBERT SARNOFF ("MR. SARNOFF"), by and through his Successor in Interest KENNETH SARNOFF; and KENNETH SARNOFF and DOUGLAS SARNOFF, individually, ("Plaintiffs") request remand for lack of complete diversity and lack of federal subject matter jurisdiction.

## I.     INTRODUCTION

MR. SARNOFF became a resident of SILVERADO SENIOR LIVING – BEVERLY PLACE in Los Angeles, CA on March 3, 2020, tested positive for COVID-19 on or about April 15, 2020, and died on April 20, 2020 from a combination of COVID-19, elder abuse and neglect, and the negligent actions of the SILVERADO DEFENDANTS. MR. SARNOFF died frightened and alone, without his family by his side. MR. SARNOFF also died in vain when the SILVERADO DEFENDANTS simply failed to properly follow their own internal procedures to prevent the spread of COVID-19 at SILVERADO SENIOR LIVING – BEVERLY PLACE.  In March 2020, the corporate directors of SILVERADO SENIOR LIVING – BEVERLY PLACE, were aware that any person could inadvertently bring coronavirus into its building and fatally infect its residents and failed to take necessary measures to protect the residents and staff.

With full knowledge of the risk of infecting their residents and staff, SILVERADO DEFENDANTS, on the one hand, implemented stringent procedures to limit visitors, while the corporate directors, on the other hand, decided to admit a new resident ("Patient Zero"), who flew on a commercial airplane to Los Angeles from New York, the then epicenter of the virus, in the midst of the deadly virus outbreak, without screening, testing or isolation.

Tragically, MR. SARNOFF's death from COVID-19 was not an unavoidable Act of God – the SILVERADO DEFENDANTS' decision to admit Patient Zero put at risk each of the existing residents and staff, for no other purpose

**NOTICE OF MOTION AND MOTION TO REMAND**

than to make money.  The decision to admit Patient Zero without any safety precautions or isolation was undertaken in knowing and conscious disregard of the risk of harm to the residents of SILVERADO SENIOR LIVING – BEVERLY PLACE and its staff.

Remand to state court is proper because Plaintiff's Complaint pleads no federal claim on its face. This elder abuse and wrongful death case, which asserts only state law claims, belongs in Superior Court, like any other elder abuse case arising under the Elder and Dependent Adult Civil Protection Act (Welfare & Inst. C. §15600 et seq.) and is in fact one of seven (7) related cases. Although Plaintiffs allege no federal claims, Defendants improperly attempt to re-cast the complaint as more to their liking, so they can create federal subject matter jurisdiction where, in reality, none exists. Specifically, Defendants justify removing this state court case to federal court for the following reasons.

*First*, Defendants removed this case pursuant to 28 U.S.C. § 1332 on the basis of diversity jurisdiction. Specifically, Defendants allege that there is a diversity of citizenship between Plaintiffs and Defendants, and the controversy exceeds $75,000.00, exclusive of interest and costs.  However, "[t]he diversity jurisdiction statute, as construed for nearly 200 years, requires that to bring a diversity case in federal court against multiple defendants, each plaintiff must be diverse from each defendant..." *Lee v. AM. Nat'l Ins. Co*., 260 F.3d 997 (9th Cir. 2001)(*citing Wisconsin Dep't of Corrections v. Schacht*, 524 U.S. 381, 391-92 (1998); *Strawbridge v. Curtiss,* 7 U.S. 267 (1806)). Complete diversity cannot be met here because not *each plaintiff* is diverse from *each defendant*. Rather, MR. SARNOFF's estate is a citizen of California and several defendants are also citizens of California, thus destroying diversity.

*Second*, Defendants removed the case on the grounds that the Court has original jurisdiction under 28 U.S.C. § 1331 based on the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§247d-6d and 247d-6e (the "Prep Act"),

**NOTICE OF MOTION AND MOTION TO REMAND**

which provides immunity from liability for claims for loss related to "the administration to or the use by an individual of a Covered Countermeasure." Defendants are wrong. Under the "well-pleaded complaint" rule, only a plaintiff's actual claims — not the anticipated defenses of a defendant, are considered in determining federal subject matter jurisdiction. In addition, the PREP Act's liability immunity provisions do not apply because Plaintiffs' claims all relate to Defendants' *inactions* —not to Defendants' *affirmative conduct* in the "Administration" of "Covered Countermeasures," which are defined terms in the Act. Plaintiffs similarly *do not allege* that MR. SARNOFF was injured by the administration or use of any drug, product, or device. To the contrary, Plaintiffs' claims are based entirely on Defendants' failures to act, including failures to implement an effective infection control program, and protect MR. SARNOFF from foreseeable health and safety hazards.

The consensus among district courts is in accord with Plaintiff's request to remand.  In a very recent decision that came out of New York entitled *Marc Dupervil, as the proposed administrator of the estate of Frederic Dupervil, deceased, v. Alliance Health Operations, LLC, dba Linden Center for Nursing and Rehabilitation, John and Jane Does, 1-10*, No. 1:20-CV-4042-PKC-PK, 2020 WL 2747335, U.S. District Judge Pamela K. Chen granted Plaintiff's motion to remand by Memorandum and Order dated February 2, 2021.  (Exh. "A").

The facts in this case are strikingly similar. In the *Dupervil* matter, Plaintiff filed common law claims for negligence and wrongful death after his father contracted COVID-19 and died in the defendant's nursing home. Plaintiff contended, among other things, the failure to take necessary precautions to prevent the spread of COVID-19 including failure to enforce social distancing, failure to wear cloth face coverings, and failure to adequately screen for COVID-19.  The defense removed, contending that PREP ACT Immunity mandated removal, and relying on Secretary Azar's IV Amendment and the January 8, 2021 Advisory

**NOTICE OF MOTION AND MOTION TO REMAND**

Opinion from the office of the general counsel. In a comprehensive review of the PREP ACT, including the Secretary's declaration under the PREP ACT regarding the COVID-19 pandemic, all its amendments, and the January 8, 2021 Advisory Opinion, the Court concluded it did not have subject matter jurisdiction over plaintiff's state law claims under 28 U.S.C. sec. 1331, and thus, removal under 28 U.S.C. sec 1441(a) was improper.  The same conclusion is merited here.

*Third,* Defendants removed this case pursuant to 28 U.S.C. §1442(a)(1) because, they claim, at all relevant times they were "acting under" the direction of a federal officer.  Because Defendants have failed to establish that they were assisting a federal officer or agency in carrying out the duties or tasks of the federal superior, as well as for other reasons, *Fidelitad, Inc. v. Insitu, Inc*., 904 F.3d 1095, 1099 (9th Cir. 2018), 28 U.S.C. §1442(a)(1) is inapplicable in this case.

The court in *Dupervil* also found federal-officer removal was improper.  In *Dupervil*, as here, the nursing home argued that it was acting pursuant to the directives of the CDC and CMS which compelled them to respond to the COVID-19 pandemic in a specific way.  The court rejected that these assertions evinced the type of "special relationship" with a federal government necessary for federal-officer jurisdiction. Rather, it showed that defendants were highly regulated private persons or entities complying with federal laws and regulations. The same conclusion is also merited here.

*Fourth,* Defendants removed this case on the grounds that the case raises important federal issues.  As the court set forth in a similar case, *Martin* v. *Hollywood Premier Healthcare Center*, Case No. 2:20-cv-05937-DSF-SK, "it is clear that it is does not" raise substantial questions important to "the federal system as a whole" and therefore removal is inappropriate under this argument. In *Dupervil*, the court pointed out "consensus among district courts across the country that state-law claims of negligence and wrongful death like that plaintiff alleges here are not federal-law claims under the PREP Act." *Dupervil, as the proposed*

**NOTICE OF MOTION AND MOTION TO REMAND**

*administrator of the estate of Frederic Dupervil, deceased, v. Alliance Health Operations, LLC, dba Linden Center for Nursing and Rehabilitation, John and Jane Does, 1-10*, No. 1:20-CV-4042-PKC-PK, 2020 WL 2747335 *25.

This elder abuse case and wrongful death case should never have been removed by Defendants. Plaintiffs request that it be promptly remanded to the Los Angeles Superior Court.

## II.   PROCEDURAL HISTORY

This action was commenced in the Superior Court of California, County of Los Angeles, on or about December 10, 2020, as one of seven (7) related cases against Defendants that will be consolidated.[3] The Defendants SILVERADO SENIOR LIVING, INC.; SILVERADO SENIOR LIVING MANAGEMENT, INC., SUBTENANT 330 NORTH HAYWORTH AVENUE, LLC; LOREN SHOOK, and JASON RUSSO, hereafter collectively referred to as the "SILVERADO DEFENDANTS" removed this action to this court by Notice dated January 5, 2021; attached is a copy of the SARNOFF Complaint (Exh. "B"). Plaintiffs are now timely moving to remand this matter in accordance with 28 U.S.C § 1447(c) as a motion for remand can be made at any time before final judgment is entered.

## III.   MR. SARNOFF'S COMPLAINT

The Complaint (Exh. "B") consists of two causes of action based <u>*solely*</u> on California state statutes, regulations, and common law: Elder Abuse and Neglect (CA Welfare & Institutional Code §15600, *et seq.)*; Wrongful Death; General Negligence. The Complaint alleges how the Defendants intentionally violated their obligations and duties under California law by, among other things, failing to protect MR. SARNOFF from health and safety hazards when they allowed

---

[3] This case is related to *Apothaker vs. Silverado Senior Living, Inc. et al.*; case no. 20STCV47127; *Khorsandi vs. Silverado Senior Living, Inc. et al.*; case no. 20STCV47202; *Palamides vs. Silverado Senior Living, Inc. et al.*; case no. 20STCV47226; *Ringo vs. Silverado Senior Living, Inc. et al.*; case no. 20STCV47357; *Lebow vs. Silverado Senior Living, Inc. et al.*; case no. 20STCV47238; and *Clack vs. Silverado Senior Living, Inc. et al.*; case no. 20STCV4788.

**NOTICE OF MOTION AND MOTION TO REMAND**

admission of a new resident to fly here on a commercial airplane from a location known to have an outbreak of COVID-19, and to enter the facility without implementing appropriate isolation, screening, or protective measures or to observe and report changes of MR. SARNOFF's condition to family and physicians to ensure he did not suffer needlessly. The Complaint further alleges the Defendants breached their duty of care to MR. SARNOFF when they failed to hire, retain, and train sufficient staff to provide him with necessary care and services based on assessment and recognition of his individualized care needs. A synopsis of the Defendant's most significant abuse and neglect, as taken from the Complaint, are as follows:

| | |
|---|---|
| 3/3/20: | ALBERT SARNOFF (Deceased) enters and becomes a resident of Silverado.  He is *not* a terminally ill patient (¶53). |
| 3/10/20: | New York ordered a one-mile radius containment zone in Westchester County's New Rochelle – less than 20 miles from Manhattan. (¶45). |
| 3/12/20: | Defendants require all family and visitors to withhold visits for 2 weeks (¶4). |
| 3/13/20: | Defendants explained to all family members that "[they] are putting [their] residents at significant risk by exposing them to what may come through the front door", "limited all visitors until April 1st and further instructed: 'do not enter if you have recently traveled to an area with an outbreak of Coronavirus…'" (¶4). |
| 3/16/20: | Governor Andrew Cuomo issued an executive order closing all schools statewide, limiting recreational and social gatherings to 50 people, and closing restaurants bars, movie theaters, gyms and casinos. (¶45) |
| 3/17/20: | Mayor Bill de Blasio announced that the city should prepare for a possible shelter-in-place order. (¶ 45) |

**NOTICE OF MOTION AND MOTION TO REMAND**

| | | |
|---|---|---|
| 3/18/20: | The number of cases in New York statewide had spiked to 4,152. (¶ 45) | |
| 3/19/20: | Defendants chose to admit a new resident ("Patient Zero") who flew on a commercial flight from Manhattan to Los Angeles and came directly to Silverado's memory care unit on the third floor, without any period of isolation or quarantine.  He was accompanied by a daughter, who also flew on that flight with him, and who had flown to New York from London.  Once in the building, he was not quarantined and not tested for the virus (¶ 4). | |
| 3/20/20: | Patient Zero was symptomatic with cough, fever, and lethargy.  His symptoms were alarming enough for the facility to call 911, where he was taken to Cedars-Sinai Medical Center.  The next day, he tested positive for coronavirus. (¶ 4) | |
| 4/12/20: | MR. SARNOFF started to exhibit symptoms of COVID-19 including coughing and fever.  He was subsequently tested for COVID-. (¶ 54) | |
| 4/15/20: | MR. SARNOFF's rest results came back positive for COVID-19. Over the next several days, MR. SARNOFF's symptoms continued; yet MR. SARNOFF was not transferred to a higher level of care.  On information and belief, no physician services were sought or coordinated by Defendants. (¶ 55) | |
| 4/20/20: | MR. SARNOFF passed away in his room at Silverado without receiving needed supportive care for COVID-19 (¶ 56). | |

## IV.   LEGAL STANDARDS FOR REMOVAL AND REMAND

There is a statutory right to removal based on complete diversity, *see Lee v. AM. Nat'l Ins. Co.*, 260 F.3d 997, 1004 (9th Cir. 2001), which is not present here. In addition, the statutory right to remove a case from state court to federal court applies where a case originally filed in state court presents a significant issue of federal law that necessarily must be decided to adjudicate a state law cause of action. *See, e.g., Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir.

**NOTICE OF MOTION AND MOTION TO REMAND**

1979); *Caterpillar Inc. v. Williams,* 482 U.S. 386, 392 (1987); 28 U.S.C. § 1441(a), (b) and 28 U.S.C. §1332(a). Indeed, the Ninth Circuit strictly construes the removal statute such that federal jurisdiction must be rejected if there is a doubt as to a party's right to removal. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010) quoting from *Gaus v. Miles, Inc.,* 980 F.2d 564, 566 (9th Cir. 1992). Further, "[a]s a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). Thus, "preemption," which is an affirmative defense to a state law claim, is generally insufficient to invoke federal question jurisdiction. *See Marin General Hosp. v. Modesto & Empire Traction,* 581 F.3d 941 (9th Cir. 2009).

## V.     THE DISTRICT COURT DOES NOT HAVE JURISDICTION PURSUANT TO 28 U.S.C. § 1332 BECAUSE DEFENDANT FAILS TO MEET THE "COMPLETE DIVERSITY" REQUIREMENT

"[C]ompliance with the diversity statute, including its complete diversity requirement, is the sine qua non of diversity jurisdiction..." *Lee v. AM. Nat'l Ins. Co*., 260 F.3d 997, 1004 (9th Cir. 2001).  "In a case involving claims against multiple defendants, 'the plaintiff must meet the requirements of the diversity statute for each defendant'" *Id.* at *Newman-Green, Inc. v. Alfonzo-Larrain,* 490 U.S. 826 (1989).  In the cases of a deceased, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent." 28 U.S.C. § 1332(c).  Here, because MR. SARNOFF is a citizen of the state of California, and multiple defendants are citizens of California (Defendant Silverado Senior Living, Inc.; Defendant Silverado Living Management, Inc.; Loren Shook; Jason Russo; nominal Defendant Nancy Sarnoff), *see Grynberg v. Kinder Morgan, Ltd. P'ship,* 805 F.3d 901, 905 (10th Cir. 2015), Defendants cannot meet the requirements of complete diversity.

At the time of his death, MR. SARNOFF was a resident of SILVERADO

**NOTICE OF MOTION AND MOTION TO REMAND**

SENIOR LIVING – BEVERLY PLACE, located in Los Angeles, California. According to 28 U.S.C. § 1332(c), the legal representative must be in the same state as MR. SARNOFF – in this case, California. Here, KENNETH SARNOFF properly filed the instant action as MR. SARNOFF's "successor in interest."  A "decedent's successor in interest" is "the beneficiary of the decedent's estate," and KENNETH SARNOFF, being the son of MR. SARNOFF, is a beneficiary of MR. SARNOFF's estate regardless of the fact that MR. SARNOFF is survived by his wife, NANCY SARNOFF, Cal. Prob. Code § 13006. *See* Cal. Prob. Code §6401 (if a decedent is survived by a spouse and two or more children, the spouse inherits all of the community property and one-third of the separate property and each child inherits two-thirds of the separate property). Therefore, KENNETH SARNOFF, as a beneficiary of MR. SARNOFF's estate, is properly a "successor in interest" and a proper legal representative to bring this claim.

Defendants deny that KENNETH SARNOFF is MR. SARNOFF's proper legal representative in their Notice of Removal (ECF 3, Exh. "C"), arguing that he has failed to properly file an affidavit pursuant to Cal. Code of Civ. Pro. § 377.32. However, that is simply false. *See* (ECF 1, Exh. 5, "Declaration of Ken Sarnoff Re Standing on Behalf of Albert Sarnoff," ("Ken Sarnoff Decl."). KENNETH SARNOFF, in compliance with Cal. Code of Civ. Pro. § 377.32, sets forth the following:

1. His name, complying with subsection (a)(1);
2. That his father, MR. SARNOFF, died on April 20, 2020 in Los Angeles County, complying with subsection (a)(2);
3. That "No proceeding is now pending in California for the administration of the decedent's estate", complying with subsection (a)(3);
4. That he is MR. SARNOFF's successor in interest as defined in the Code of Civil Procedure section 377.11 and succeed to his interests in this action, complying with subsection (a)(5)(A);
5. That no other person has a superior right to commence the action or proceeding or to be substituted for the decedent in the pending action or

**NOTICE OF MOTION AND MOTION TO REMAND**

proceeding, complying with subsection (a)(6);

6. And that he declares under penalty of perjury under the laws of the State of California that the foregoing is true and correct, complying with subsection (a)(7).

Defendants cite to no case law that requires KENNETH SARNOFF to attest to additional facts beyond the requirements of Cal. Code Civ. Pro. § 377.32. Defendants allege *Estate of Manzo v. County of San Diego,* 2008 U.S. Dist. LEXIS 67467 mandates dismissal where an affidavit fails to qualify a person as a successor in interest; however, *Estate of Manzo* provides that should an affidavit fail to qualify a person as a successor in interest, the court should order the plaintiff to file a written response to the order as to why the claims brought by the estate should not be dismissed for lack of standing, thereby giving the plaintiffs an opportunity to remedy any alleged defect in the affidavit. *Id.* at 2.  Here, there is no defect. But even if there were, Plaintiff must be given an opportunity to cure.

Accordingly, because KENNETH SARNOFF has fully complied with the requirements of Cal. Code of Civ. Pro. § 377.32 and has established standing to bring an action on behalf of the estate of MR. SARNOFF, MR. SARNOFF's California citizenship may be considered in determining diversity of citizenship. Because MR. SARNOFF is a citizen of California, Defendants cannot fulfil the requirement of "complete diversity" mandated by 28 U.S.C. § 1332.

## VI.   PLAINTIFFS' COMPLAINT DOES NOT PRESENT ANY FEDERAL QUESTION AND THEREFORE THIS COURT DOES NOT HAVE FEDERAL QUESTION JURISDICTION UNDER 28 U.S.C. § 1331

It is well settled law that federal question jurisdiction must be based solely on the claims made by the plaintiff in the complaint and the defendant cannot "create" federal question jurisdiction by invoking a federal statute as an affirmative defense. *Caterpillar Inc. v. Williams,* 482 U.S. at 386, 393 (*citing inter alia Gully v. First Nat'l Bank in Meridian*, 299 U.S. 109, 112-113 (1936)); *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986)(*citing Louisville & Nashville*

**NOTICE OF MOTION AND MOTION TO REMAND**

R. Co., 211 U.S. at 152 (overruled on other grounds)). In *Caterpillar*, the United States Supreme Court succinctly re-stated the "century-old jurisdictional framework governing removal of federal question cases":

> Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant…The presence or absence of federal-question jurisdiction is governed by the "wellpleaded complaint rule," which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint…The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law. Ordinarily federal pre-emption is raised as a defense to the allegations in a plaintiff's complaint. Before 1887, a federal defense such as pre-emption could provide a basis for removal, but, in that year, Congress amended the removal statute. We interpret that amendment to authorize removal only where original federal jurisdiction exists…Thus, it is now settled law that a case may not be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue. *Caterpillar*, 482 U.S. at 392–93 (citations omitted)(emphasis added).

Here, there is no dispute the claims asserted in Plaintiffs' Complaint are purely state law claims and no federal question is raised by the Complaint. Defendants' sole basis for claiming federal question jurisdiction is their claim that the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§ 247d-6d ("PREP Act") preempts the state law claims and provides them immunity from those claims. However, under the "well-pleaded complaint rule," the federal courts have subject matter jurisdiction under 28 U.S.C. § 1331 only "when a federal question is presented on the face of the plaintiff's properly pleaded complaint." *Wayne v. DHL Worldwide Express*, 294 F.3d 1179, 1184 (9th Cir. 2002)(*quoting Caterpillar Inc*., 482 U.S. at 392)(emphasis added). It is not enough that there may be a defense grounded in federal law. *Caterpillar Inc*., 482 U.S. at 392–93. The

**NOTICE OF MOTION AND MOTION TO REMAND**

Supreme Court has referred to this fundamental rule of federal question jurisdiction as "century-old" "settled law" and, along with various other federal courts, the Supreme Court has addressed this same argument numerous times all to the same result—an affirmative defense under a federal statute does not invoke federal question jurisdiction. *Id.* (*quoting Metro. Life Ins. Co.*, 481 U.S. at 63).

In *Martin* v. *Hollywood Premier Healthcare Center*, Case No. 2:20-cv-05937-DSF-SK, Judge DALE S. FISCHER granted Plaintiff's motion to remand by Decision and Order dated September 20, 2020.[4] Attached are copies of the *Martin* Complaint (Exh. "D"), the Notice of Removal (Exh. "E"), and Judge FISCHER's Decision and Order (Exh. "F"), pursuant to Ninth Circuit Rule 32.1.[5] A review of the *Martin* papers discloses that defendant had similarly made an argument that jurisdiction existed under 28 U.S.C. § 1331, but the Court granted the plaintiff's order for remand, noting that the complaint, as here, is limited _solely_ to California state law and causes of action[6]  Similarly, here, Plaintiffs' Complaint pleads state law claims based on negligence and wrongful death and the PREP Act

---

[4] "Federal Rule of Evidence 201 allows a court to take judicial notice of facts that are not subject to reasonable dispute in that they are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. See Fed.R.Evid. 201(b); see also Fed. R. Bankr.P. 9017 (applying Federal Rules of Evidence to bankruptcy proceedings). Although a court may take judicial notice of its own records, it cannot take judicial notice of the truth of the contents of all documents found therein. See M/ V American Queen v. San Diego Marine Constr. Corp., 708 F.2d 1483, 1491 (9th Cir.1983)." *Herb Goetz & Marlen Horn Associates, Inc., In re*, 120 F.3d 268 (9th Cir. 1997)

[5] CITING JUDICIAL DISPOSITIONS (a) Citation Permitted. A court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions that have been: (i) designated as "unpublished," "not for publication," "non-precedential," "not precedent," or the like; and (ii) issued on or after January 1, 2007. (b) Copies Required. If a party cites a federal judicial opinion, order, judgment, or other written disposition that is not available in a publicly accessible electronic database, the party must file and serve a copy of that opinion, order, judgment, or disposition with the brief or other paper in which it is cited. (As added Apr. 12, 2006, eff. Dec. 1, 2006.).

[6] Indeed, the *Martin* Notice of Removal also argues for removal on the basis of the Prep Act and 28 U.S.C. § 1442(a), the same grounds made by Defendants here.

**NOTICE OF MOTION AND MOTION TO REMAND**

has only entered the case by way of Defendants' affirmative defense. In line with the ruling in *Martin*, remand is appropriate here.

## VII.   THE PREP ACT DOES NOT APPLY AND SHOULD NOT SERVE AS A BASIS FOR JURISDICTION

If the PREP Act does not apply to the allegations contained in the Complaint, it cannot serve as the basis for removal. In determining the applicability of the PREP Act, the Court must look to the plain meaning of the language used in the statute. None of the provisions of the Secretary's IV Amendment to its PREP directives confers federal subject matter jurisdiction in this case or otherwise preempts California's specific laws regarding actions to recover damages for elder abuse and neglect. The very language of the PREP Act denotes action taken, while Plaintiffs' Complaint pleads Defendants' inaction. Here, as will be discussed, the Complaint's allegations include SILVERADO SENIOR LIVING – BEVERLY PLACE's *failure* to implement infection control procedures, resulting in the spread of COVID-19 in the facility, resulting in MR. SARNOFF's death.

### A. Plaintiffs do not allege claims based on the use of a "Covered Countermeasure" and therefore the PREP Act is not implicated

The language in the Prep Act is quite specific that it only applies to injuries caused by "the administration to or the use by an individual of a covered countermeasure . . .." 42 U.S.C.A. § 247d-6d(a)(1).  The PREP Act provides the immunity for a "covered person' for liability for loss "caused by, arising out of, relating to, or resulting from" the administration or use of a "covered countermeasure" after a declaration of emergency has been issued. The scope of the claim for loss must have a causal relationship with the administration to or use by a "covered countermeasure".   42 U.S.C.A. § 247d-6d(a)(2)(B).  Thus, the scope of the immunity, by the specific language of the statute, is limited to circumstances in which a "Covered Countermeasure" is "administered to" or "used

---

**NOTICE OF MOTION AND MOTION TO REMAND**

by" an individual. Although the PREP Act itself does not define the term "administered to," the Secretary of the Department of Health and Human Services specifically defined that term in the March 17, 2020 declaration as the "physical provision of the countermeasures to recipients . . . ." (*See* 85 Fed. Reg. 52, Section IX (*Dep't of Health and Human Servs.*, March 17, 2020)).

To qualify for immunity under the PREP Act, Plaintiffs' claims must be related to Defendants' use of a "Covered Countermeasure." The Secretary's March 17, 2020, declaration relative to COVID-19, limited the "Covered Countermeasures" to "any antiviral, any other drug, any biologic, any diagnostic, any other device, or any vaccine, used to treat, diagnose, cure, prevent, or mitigate COVID-19 or the transmission of SARS-CoV-2 . . . or any device used in the administration of any such product . . . " (*See* 85 Fed. Reg. 52, Section VI (*Dep't of Health and Human Servs.*, March 17, 2020).) Thus, "covered countermeasures" are products -- primarily drugs and the products used to provide those drugs to patients, and <u>not</u> policies, procedures, protocols, guidelines, or recommendations. The list of all of the "therapeutics" included as "covered countermeasures" and the list of all of the "medical devices" included as "covered countermeasures" are attached as Exh. "G". Of note, all of the items listed in Exh. "G" are drugs or other physical products.

Defendants mention "countermeasures" in their Notice of Removal but do not, and could not, allege that term includes inaction. Defendants' Notice of Removal claims that respiratory protective devices approved by NIOSH (National Institute for Occupational Safety and Health), (ECF 1, ¶ 29) is a covered countermeasure. Of further note, there is not a single policy, procedure, protocol, guideline, or recommendation listed.  Specifically, "screening employees before allowing them to enter the facility" is not listed as a "covered countermeasure." "Social distancing" is not listed as a "covered countermeasure."

Plaintiffs' Complaint does not allege the administration or the affirmative

**NOTICE OF MOTION AND MOTION TO REMAND**

use of a drug or device, much less any of the drugs, devices, and/or vaccines specifically included as "Covered Countermeasures." Rather, the allegations against Defendants relate to their failure to have, implement, and/or execute an effective infection control program described *supra*. (ECF 1, Exh. 1 (Complaint) pgs. 3-5, ¶¶4-13.).  Accordingly, the Prep Act does not apply.

The specific question of what constitutes "administration" or "use" of a "Covered Countermeasure" has been addressed by the courts who have resolved the question of whether the PREP Act applied based on whether the allegations of defendants' wrongdoing arose from the physical provision of a vaccine to the plaintiff. If the state court claims arose from the actual, physical provision of the vaccine to the injured party, the PREP Act applied. *See Parker v. St. Lawrence County Pub. Health Dept*., 102 A.D.3d 140 (N.Y. App. Div. 2012). If the state court claims arose out of a failure to give the vaccine or before the vaccine was given, the PREP Act did not apply. *See Casabianca v. The Mount Sinai Medical Center*, 2014 WL 1043521; *Kehler*, 2012 WL 1945952.

In *Casabianca*, the plaintiff alleged the hospital was "negligent in allowing and causing the plaintiff's decedent . . . to contract the H1N1 virus . . . the defendant failed to administer and/or make sure that the patient received the H1N1 immunization." *Casabianca*, 2014 WL 1043521. In emphasizing that the applicability of the PREP Act is dependent on the "administration or use of a Covered Countermeasure" and defining "administration" as "physical provision of a countermeasure to a recipient", the New York Supreme Court concluded that the PREP Act did not apply precisely because the plaintiff alleged the defendants had failed to provide the vaccine, and not because they were somehow negligent in the administration or use of the vaccine. As the court pointed out, the PREP Act would apply to circumstances in which the vaccine was provided in an inappropriate dose but would not apply where there was an alleged failure to provide the vaccine to the patient.  Similarly, in *Kehler v. Hood*, 2012 WL 1945952 (E.D. Mo. 2012),

**NOTICE OF MOTION AND MOTION TO REMAND**

another vaccine case, the United States District Court for the Eastern District of Missouri found that the alleged wrongdoing (defendants' failure to obtain informed consent and a specialty consult) did not arise out of the physical act of providing the vaccine, the PREP Act was not applicable, and plaintiffs' claims did not arise under federal law. *Id.*

Here, as in *Casabianca* and *Kehler*, the wrongdoing Plaintiffs allege is Defendants' failure to act—in particular, the failure to take reasonable steps to prevent the introduction and spread of the COVID-19 virus in Defendants' facility. Plaintiffs do not assert any theory of liability that is in any way related to the Defendants' "physical provision" of anything, be it drug, device, or other "countermeasure." Rather, Plaintiffs' claims are based on Defendants' failure to follow their own enacted infection control program resulting in Defendants' failure to properly screen Patient Zero or Patient Zero's daughter such that his COVID-19 positive status would have been determined prior to admittance and the subsequent failure to isolate him from existing residents and staff such that MR. SARNOFF contracted COVID-19, resulting in his death. *Id.* pp. 3-4. Thus, Plaintiffs' claims do not fall within the defined scope of the PREP Act and it does not apply. If the PREP Act does not apply to the case, it cannot serve as the basis for federal question jurisdiction under 28 U.S.C. § 1331.

### B. Defendants are not "program planners" nor "qualified persons" under the PREP Act

Defendants state in their Notice of Removal that they were "covered persons," "program planners," and/or "qualified persons" at all times set forth in the Complaint. (ECF 1, p. 14-17, ¶¶ 38-43). This is incorrect. Plaintiffs are not claiming Defendants were administering a covered countermeasure and therefore they do not fall within the definition of "covered person," "program planner," or "qualified person" regarding this lawsuit. *See* 42 U.S.C. § 247d-6d(a)(1), (2)(B), (i)(2), (i)(6), (i)(8).

**NOTICE OF MOTION AND MOTION TO REMAND**

### C. The Department of Health & Human Services' Advisory Opinion shows the PREP Act does not apply to this case

The Department of Health & Human Services issued an Advisory Opinion on April 17, 2020 that sets forth the views of the Office of General Counsel in response to address questions and concerns about the scope of immunity under the PREP Act. (Advisory Opinion on the Public Readiness and Emergency Preparedness Act and the March 10, 2020 Declaration Under the Act (Dep't of Health and Human Servs., May 19, 2020)(Exh. "H") hereinafter "the Advisory Opinion"). The Advisory Opinion is clear that the PREP Act is intended to provide immunity to a person or entity that supplies, purchases and/or uses defective drugs or products manufactured to combat COVID-19. The Advisory Opinion provides an example of PREP Act immunity in which tests or respirators were purchased and used in good faith but were later discovered to be counterfeit. (Exh "H," p. 5.) The Opinion concludes that "[u]nder those circumstances, we believe that the person would be immune against a claim arising out of the use of a counterfeit test or respirator." *Id.* In accord with the plain language of the PREP Act and in accord with all of the applicable authority, PREP Act immunity is based on "use" of a "product."

The Complaint's allegations include SILVERADO SENIOR LIVING – BEVERLY PLACE's *failure* to implement infection control procedures, resulting in the spread of COVID-19 in the facility, resulting in MR. SARNOFF's death. None of the provisions of the Secretary's IV Amendment to its PREP directives confers federal subject matter jurisdiction in this case or otherwise preempts California's specific laws regarding actions to recover damages for elder abuse and neglect.  In no way does the Advisory Opinion conclude that an assisted living facility accepting money to care for the country's most vulnerable population is immune from liability when it fails to prevent the entry and/or spread of COVID-19, causing its residents to die of COVID-19.

17

**NOTICE OF MOTION AND MOTION TO REMAND**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

As demonstrated by the now over 15 district court decisions holding that the PREP Act does not displace state law as to claims based on the failure of the defendant to use countermeasures, this is a matter where courts have determined that there is no ambiguity leaving room for the agencies to fill. *See Dupervil, supra, Martin* v. *Hollywood Premier Healthcare Center*, Case No. 2:20-cv-05937-DSF-SK. *See also* Judge Olguin's opinion in *Jackie Saldana v. Glenhaven Healthcare LLC* (C.D. Cal., Oct. 14, 2020, No. CV205631FMOMAAX) 2020 WL 6713995, at *2 ("With respect to complete preemption, the PREP Act is "not one of the three statutes that the Supreme Court has determined has extraordinary preemptive force." *See City of Oakland v. BP PLC*, 969 F.3d 895, 907 (9th Cir. 2020) …Moreover, defendants **"make a lengthy argument in favor of their immunity under the PREP Act, but mere immunity against state law or preemption of state law is not the equivalent of complete preemption and does not provide removal jurisdiction."** [Fn] *Martin*, 2020 WL 5422949, at *2; *see also Caterpillar Inc. v. Williams*, 482 U.S. 386, 393, 107 S.Ct. 2425, 2430 (1987) ("[I]t is now settled law that a case may <u>not</u> be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint[.]") (emphasis in original). Accordingly, the court finds that the PREP Act does not confer federal question jurisdiction.")

Nothing in the Advisory Opinion justifies a departure from the unanimous views of the courts that have already addressed this question and to conclude that the PREP Act affords a complete preemption defense sufficient to justify removal.

## VIII.  COMPLETE PREEMPTION DOES NOT APPLY IN THIS CASE

Defendants' Notice of Removal argues that this case comes under a very narrow exception to the "well-pleaded complaint rule" that provides for federal court jurisdiction in cases of "complete preemption." (*See* ECF 1, pg. 26-27, ¶¶26-27.)  However, because the PREP Act does not apply, the Court need not reach the question of preemption. The question of whether the PREP Act completely

**NOTICE OF MOTION AND MOTION TO REMAND**

preempts any state law claims Plaintiffs could assert begins with the threshold question of whether the PREP Act even applies to the allegations in Plaintiffs' Complaint. If the PREP Act does not apply, the inquiry ends—the question of complete preemption is rendered moot, and remand is required.

A. **General rules of federal question jurisdiction favor remanding the case to state court**

The party invoking federal jurisdiction bears the burden of establishing such jurisdiction as a threshold matter. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009). Any doubts concerning removability must be resolved in favor of remanding the case to state court. *California v. AbbVie Inc.*, 390 F. Supp. 3d 1176, 1180 (N.D. Cal. 2019); *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1107 (9th Cir. 2010). In determining whether a claim "arises under" federal law, courts must be mindful that the nature of federal removal jurisdiction— restricting as it does the power of the states to resolve controversies in their own courts—requires strict construction of the legislation permitting removal. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108–09 (1941)). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank*, 539 U.S. at 6. Generally, "preemption" is an affirmative defense to a state law claim and a defendant's assertion of it is insufficient to invoke federal question jurisdiction. *See, Marin General Hosp.*, 581 F.3d at 941; *Caterpillar*, 482 U.S. at 392–93.

B. **"Complete Preemption" as an exception to the general rule against federal question jurisdiction is not implicated in this case**

Even if the PREP Act applied to this case, "[t]he doctrine of complete preemption, a narrow exception to [the well-pleaded complaint rule] is not implicated here." *Kehler v. Hood*, 2012 WL 1945952, *5 n.5 (E.D. Mo. 2012)(emphasis in original). By its clear and explicit language, its scope is not "so broad as to entirely replace any state-law claim." *Franciscan Skemp Healthcare,*

**NOTICE OF MOTION AND MOTION TO REMAND**

*Inc. v. Cent. States Joint Bd. Health & Welfare Trust Fund*, 538 F.3d 594, 596 (7th Cir. 2008)(emphasis added).  Rather, the PREP Act's express language is specifically limited to a very narrow set of activities involving a specific list of products and in no way supplants Plaintiffs' state common law claims for negligence in failing to act to prevent the entry and spread of COVID-19 in its facility.

In *Kehler v. Hood*, 2012 WL 1945952 (E.D. Mo. 2012). the plaintiff brought a medical negligence suit in state court alleging his physician failed to provide him with adequate informed consent prior to administering the H1N1 vaccine. *Id*. at *1. The defendant physician asserted federal question jurisdiction under the PREP Act. *Id*. In discussing the PREP Act's preemption provision, the court reiterated the well-settled rule that a defense of federal preemption cannot give rise to federal question jurisdiction and dismissed the "complete preemption" argument stating that "[t]he doctrine of complete preemption, a narrow exception to this rule, is not implicated here." *Id*., n.5 (citation omitted) (emphasis in original).

In a similar case, *Martin* v. *Hollywood Premier Healthcare Center*, Case No. 2:20-cv-05937-DSF-SK, in holding that defendant's argument that complete preemption applied to a wrongful death and elder abuse action because of the Prep Act, Judge Fischer explained:

> It is largely irrelevant that federal courts have exclusive jurisdiction under the PREP Act because none of the claims in the complaint, on its face, are brought under that Act. If Defendants believe that some or all of Plaintiffs' state law claims are barred by the PREP Act, the appropriate response is to file a demurrer in state court. If the state court dismisses the state law claims, Plaintiffs could then decide if they wish to file claims under the PREP Act in the District of the District of Columbia, the court with exclusive jurisdiction over such claims. See 42 U.S.C. § 247d-6d(e)(1). Otherwise, the Court declines to find that Congress has completely occupied the field of actions or inactions related to COVID-19 spread and treatment to such a degree that all state law claims related to that topic are subject to removal.

**NOTICE OF MOTION AND MOTION TO REMAND**

Likewise, complete preemption was discussed at length in *Dupervil* and the court found there was no complete preemption because the PREP ACT did not completely occupy the field by creating an exclusive cause of action. In contrast to ERISA or Labor Management Relations Act (LMRA) claims, the PREP ACT does not create rights or duties, but rather provides immunity for certain types of claims and directs most claims out of the court system and into a compensation fund. *See* 42 U.S.C. §§ 247d6e(a), 247d-6e(b).

To the extent Defendants will seek to rely on the January 8, 2021 Advisory Opinion from the Department of Health and Human Services, again *Dupervil* is instructive. The *Dupervil* court repeatedly notes that the Advisory Opinion does not have the force and effect of law.  Further, in *Dupervil*, the Advisory Opinion was not entitled to *Chevron* deference.  *See United States v. Mead Corp.*, 533 U.S. 218, 226–27 (2001) (deciding that no *Chevron* deference is due where an agency's rule or opinion was not "promulgated in the exercise of" any delegated congressional authority).  No such deference is appropriate here either. See *Dupervil, 2020 WL 2747335 *19*.

The breach of duty Plaintiffs allege in the Complaint is Defendants' duty to act reasonably under the circumstances in order to provide care to its residents in compliance with the applicable standard of care. Specifically, Plaintiffs allege Defendants failed to act reasonably and therefore failed to comply with the standard of care by failing to screen incoming patients for signs and symptoms of infection, failing to enforce social distancing protocols, failing to isolate infected residents, etc. In a healthcare context, this duty to act reasonably under the circumstances and to comply with the standard of care arises very specifically from the healthcare provider/patient relationship. It was not created by the PREP Act. It does not arise from the PREP Act. It is not derived from the PREP Act. It does not depend on the PREP Act. It is not related to any of the provisions of the PREP Act. In fact, it is not mentioned anywhere in the PREP Act, or the Secretary's

21

**NOTICE OF MOTION AND MOTION TO REMAND**

Declaration. This duty is one that applies to every health care provider every time they provide any type of care to a patient/resident. It existed long before the PREP Act was enacted and will continue to exist long after the current pandemic subsides, and the Secretary's Declaration expires. Defendants' duty to comply with the standard of care is completely independent of the PREP Act.

## IX. "FEDERAL OFFICER" REMOVAL PURSUANT TO 28 U.S.C. § 1442(a)(1) IS NOT SUPPORTED

As an exception to the well-pleaded complaint rule, *see N.G. v. Downey Reg'l Med. Ctr.,* 140 F. Supp. 3d 1036, 1039 (C.D. Cal. 2015). 28 U.S.C § 1442(a)(1), authorizes any officer of the United States who is sued in an official or individual capacity, to remove the action to federal court based on the assertion of a federal defense.[7] 28 U.S.C § 1442(a)(1) states that an action against or directed to the following may be removed:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

Removal is appropriate under §1442(a)(1), when the removing defendant establishes they were acting under the direction of a federal officer when they engaged in the tortious conduct, there is causal nexus between the plaintiff's claims and the defendant's actions under federal direction, and defendants have raised a colorable defense based upon federal law. *Fidelitad, Inc. v. Insitu, Inc*., 904 F.3d 1095, 1099 (9th Cir. 2018).

In *Martin* v. *Hollywood Premier Healthcare Center*, Case No. 2:20-cv-05937DSF-SK, Judge Fischer explained:

---

[7] 166 A.L.R. Fed. 297 (Originally published in 2000).

**NOTICE OF MOTION AND MOTION TO REMAND**

> The directions Defendants point to are general regulations and public directives regarding the provision of medical services. But "[a] private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase 'acting under' a federal 'official.' And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored." *Watson v. Philip Morris Companies, Inc.*, 551 U.S. 142, 153 (2007). Therefore, removal is not justified by federal officer jurisdiction.

Similarly, here, Defendants do not satisfy the elements for removal under §1442(a)(1). General regulatory oversight is not sufficient.

### A. Defendants Were not "Acting Under" the Direction of a Federal Officer

"For a private entity to be 'acting under' a federal officer, the private entity must be involved in 'an effort to assist, or to help carry out, the duties or tasks of the federal superior.'" *Fidelitad, Inc.*, 904 F.3d at 1099 (9th Cir. 2018)(*quoting Goncalves*, 865 F.3d at 1245). The "relationship typically involves 'subjection, guidance, or control.'" *Watson*, 551 U.S. at 151. *See, e.g., Maryland v. Soper*, 270 U.S. 9, 30 (1926)(a private party acting as a federal officers' driver in a distillery raid had "the same right to the benefit of" the removal provision as the federal agents); *Davis v. South Carolina*, 107 U.S. 597, 600 (1883) (a soldier who killed a distiller during a raid could remove his criminal case because he "lawfully assist[ed]" a revenue officer "in the performance of his official duty").[8]

Here, Defendants insist that SILVERADO SENIOR LIVING—BEVERLY PLACE "was acting at the specific direction and oversight of federal authorities to

---

[8] In *Panther Brands, LLC v. Indy Racing League, LLC*, 827 F.3d 586, 590 (7th Cir. 2016) the Seventh Circuit puts the early distillery raid cases in context, noting that "[t]here are indeed cases supporting … removal "where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete."" The Court continues "merely being subject to federal regulations or performing some functions that the government agency controls is not enough to transform a private entity into a federal officer." *Id.*

---

**NOTICE OF MOTION AND MOTION TO REMAND**

address the on-going federal effort and national state of emergency to contain the COVID-19 pandemic and prevent the spread of the virus" (ECF 1, p. 29-30, ¶ 57). However, they fall far short of demonstrating that they were transformed into federal officers or were standing in the shoes of a federal officers.

While long-term care facilities (and their owners) accept regulation under Medicare in exchange for receiving Medicare and Medicaid funds, this has never been enough to satisfy the "acting under" test for "federal officer" jurisdiction. *N.G. v. Downey Regional Medical Center*, 140 F. Supp. 3d 1036, 1038 (C.D. Cal. 2015) (Court rejecting removal on the basis of 28 U.S.C. § 1442(a)(1) of plaintiff's claim on the grounds that defendants provided healthcare to people who receive Medicare or Medicaid). *Id*. at 1040. The *N.G.* court went on to say that simply complying with "utilization and professional protocols decided on by federally designated Quality Improvement Organizations," falls short of establishing that the federal government directed and controlled the defendant. *Id*. at 1041. The court relied on the United States Supreme Court's decision in *Watson v. Philip Morris*, 551 U.S. 153, which held that:

> a highly regulated firm cannot find a statutory basis for removal in the fact of federal regulation alone. A private firm's compliance (or noncompliance) with federal laws, rules, and regulations does not by itself fall within the scope of the statutory phrase "acting under" a federal "official." And that is so even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored. A contrary determination would expand the scope of the statute considerably, potentially bringing within its scope state court actions filed against private firms in many highly regulated industries.

Simply complying with the law does not bring a private actor within the scope of the federal officer removal statute. *See Fidelitad, Inc*., 904 F.3d at 1100 (*citing Watson*, 551 U.S. at 152); *see also Riggs v. Airbus Helicopters, Inc*., 939 F.3d 981, 985 (9th Cir. 2019), *cert. denied*, No. 19-1158, 2020 WL 3492671 (U.S. June 29, 2020); *Vaccarino v. Aetna, Inc*., No. EDCV1802349JGBSHKX, 2018 WL

**NOTICE OF MOTION AND MOTION TO REMAND**

6249707, at *5 (C.D. Cal. Nov. 29, 2018).

In *Dupervil*, Defendants asserted that they were acting under specific federal instructions/regulations since CMS and the CDC specifically compelled healthcare providers and nursing homes to respond to the COVID-19 pandemic in certain ways. Even these assertions were found to be insufficient to evince a "special relationship" with the federal government. The court in *Dupervil* relied on a US District Court order pointing out the far-reaching, and unsupported, potential impact if defendant's position were upheld:

> "Indeed, as the United States District Court for the District of New Jersey recently observed in a case like this one, brought against owners and operators of private nursing facilities:
>
>> Defendants' line of reasoning would have very far-reaching consequences.  Consider, for example, that during this pandemic many private persons or entities have received federal funds under the CARES act and its Paycheck Protection Program ("PPP") and may point to their dutiful compliance with CDC guidelines for limiting occupancy, face coverings, and health and sterilization measures.  Small and large entities alike, including nonprofits, restaurants, vineyards, construction companies, and religious organizations, have accepted such funding, all while attempting to implement measures to curb the spread of COVID-19.  Under Defendants' line of reasoning, all of these entities would be acting under a federal officer for purposes of [28 U.S.C.] § 1442(a)(1). *Estate of Maglioli*, — F. Supp. 3d—, 2020 WL 4671091, at *13 (internal citations omitted).

This Court, like the District of New Jersey and every other federal court to have examined the issue, agrees that the federal-officer statute cannot be read as broadly as Defendants would like it to be.  *See id.*; *see also Saldana*, 2020 WL 6713995, at *3; *Martin*, 2020 WL 5422949, at *1." *Dupervil, 2020 WL 2747335* at *33.

**NOTICE OF MOTION AND MOTION TO REMAND**

Here, Defendants, at best, articulate that the federal government was issuing guidelines for Defendants to follow. Defendants were not working alongside, for, or with the federal government. The Notice of Removal does not establish that Defendants were acting under the direction of a federal officer. The federal agencies were simply issuing guidelines. Defendants' excerpts from those guidelines omit that CMS' "COVID-19 Long-Term Care Facility Guidance" is "recommended," not mandated. (*See* Exh. "I".) There is simply no support for the Defendants being federal agents, and to conclude so here would expand the federal officer statute to unwieldly, undesirable, and unprecedented dimensions.

**B. Defendants did not establish a colorable defense based upon federal law**

Defendants do not meet the final requirement as they assert immunity under the PREP Act as set forth at 42 U.S.C. §§ 247d-6d (a)(1), 247d-6e for the following reasons as also discussed in depth *infra*. (See Section V.C.1-5.)

- Plaintiffs' claims do not fall within the scope of the PREP Act.
- Plaintiffs do not allege claims related to a "Recommended Activity" and therefore the PREP Act is not implicated.
- Plaintiffs do not allege claims based on the use of a "Covered Countermeasure" and therefore the PREP Act is not implicated.
- Defendants are not "program planners" nor "qualified persons" under the PREP act.
- The Department of Health & Human Services' Advisory Opinion shows the PREP Act does not apply to this case.

As discussed *infra*., the PREP Act does not apply, is not a colorable defense based upon federal law, and therefore should not serve as a basis for jurisdiction. (See Section V.C.1-5.)

**NOTICE OF MOTION AND MOTION TO REMAND**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## XI. CONCLUSION

For the reasons discussed above, Plaintiffs respectfully request that this Court remand this case to the Superior Court of California for the County of Los Angeles.

Dated: February 26, 2021                JOHNSON MOORE

                                By:    /s/ Jody C. Moore
                                       Jody C. Moore
                                       Nicolette Paullin
                                       Attorneys for Plaintiffs

**NOTICE OF MOTION AND MOTION TO REMAND**

1
2
3
4
5
6

Jody C. Moore, 192601
Nicolette Paullin, 291110
**JOHNSON MOORE**
100 E. Thousand Oaks Boulevard, Suite 229
Thousand Oaks, CA 91360
Telephone:   (805) 988-3661
Facsimile:   (805) 494-4777
Attorneys for Plaintiffs

7
8
9

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17
18
19
20
21
22
23

| | |
|---|---|
| ALBERT SARNOFF ("MR. SARNOFF"), by and through his Successor in Interest KENNETH SARNOFF; KENNETH SARNOFF, individually; and DOUGLAS SARNOFF.<br><br>                    Plaintiffs,<br><br>vs.<br><br>SILVERADO SENIOR LIVING, INC.; SILVERADO SENIOR LIVING MANAGEMENT, INC., SUBTENANT 330 NORTH HAYWORTH AVENUE, LLC; LOREN SHOOK, individually; JASON RUSSO, individually; NANCY SARNOFF, a Nominal Defendant only; and Does 1-25, inclusive,<br>                    Defendants. | CASE NO.: 2:21-cv-00070-JAK-JPR<br><br>**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO REMAND TO THE LOS ANGELES SUPERIOR COURT**<br><br>Hearing Date:   June 14, 2021<br>Time:               8:30 a.m.<br>Dept.:               10B |

24
25
26
27
28

TO ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on June 14, 2021, at 8:30 a.m., Plaintiffs' motion to remand this action to the Los Angeles Superior Court, pursuant to 28 U.S.C. § 1447, came before the Hon. John A. Kronstadt in Courtroom 10B of the

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO REMAND TO THE LOS ANGELES SUPERIOR COURT**

U.S. District Court for the Central District of California, Western Division, located at 350 West 1st Street, Los Angeles, CA,

Having considered the briefs, argument of counsel, and all matters presented to the Court and good cause appearing, the Court hereby orders as follows:

Plaintiffs' motion to remand this action to the Los Angeles Superior Court is GRANTED.

IT IS SO ORDERED.


Dated:_____            _____
                                   Hon. John A. Kronstadt
                                   Judge of the District Court

**[PROPOSED] ORDER GRANTING PLAINTIFFS' MOTION TO REMAND TO THE LOS ANGELES SUPERIOR COURT**

*Albert Sarnoff, by and through his Successor in Interest Kenneth Sarnoff; Kenneth Sarnoff, individually; and Douglas Sarnoff, individually vs. Silverado Senior Living, Inc.; Silverado Senior Living Management, Inc., Subtenant 330 North Hayworth Avenue, LLC; Loren Shook, individually; Jason Russo, individually*

United States District Court Central District of California
Case 2:21-cv-00070-JAK-JPR
**PROOF OF SERVICE**

I am employed in the County of Ventura, State of California.  I am over the age of 18 and not a party to the within action.  My business address is 100 E. Thousand Oaks Blvd., Suite 229, Thousand Oaks, CA 91360.

On *February 26, 2021*, I served the foregoing document(s) described as **PLAINTIFFS' NOTICE OF MOTION AND MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO REMAND; [Proposed ] ORDER** on the interested parties in this action, by placing ___ the original  _X_  a true copy thereof enclosed in a sealed envelope addressed as follows:

**Attorney for Defendants**
**Defendants, Silverado Senior Living, Inc.; Silverado**
**Senior Living Management, Inc., Subtenant 330**
**North Hayworth Avenue, LLC; Loren Shook,**
**individually; Jason Russo, individually**

Rima Badawiya, Esq.
Bryan R. Reid, Esq.
Lann G. McIntyre, Esq.
Lewis Brisbois Bisgaard & Smith LLP
550 West C Street, Suite 1700
San Diego, CA 92101
(619) 233-1006
(619) 233-8627
lann.mcintyre@lewisbrisbois.com:

__X_  By CM/ECF ELECTRONIC DELIVERY:    In accordance with the registered case participants and in accordance with the procedures set forth at the Court's website www.ecf.cacd.uscourts.gov.

Executed on February 26, 2021, at Thousand Oaks, California.

_X_  **State)**  I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

*Catherine Alspaugh*
Catherine Alspaugh