**LEWIS BRISBOIS BISGAARD & SMITH LLP**
RIMA M. BADAWIYA, SB# 204174
  Email: Rima.Badawiya@lewisbrisbois.com
650 East Hospitality Lane, Suite 600
San Bernardino, California 92408
Telephone: 909.387.1130
Facsimile:  909.387.1138

**LEWIS BRISBOIS BISGAARD & SMITH LLP**
LANN G. McINTYRE, SB# 106067
  Email: Lann.McIntyre@lewisbrisbois.com
RITA R. KANNO, SB# 230679
  Email: Rita.Kanno@lewisbrisbois.com
550 West C Street, Suite 1700
San Diego, California 92101
Telephone: 619.233.1006
Facsimile:  619.233.8627

Attorneys for Defendants
SILVERADO SENIOR LIVING, INC., SILVERADO SENIOR LIVING MANAGEMENT, INC., SUBTENANT 330 NORTH HAYWORTH AVENUE, LLC, LOREN SHOOK and JASON RUSSO

## UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ALBERT SARNOFF, by and through his Successor in Interest KENNETH SARNOFF; KENNETH SARNOFF, individually; and DOUGLAS SARNOFF, individually; <br><br> Plaintiffs, <br><br> vs. <br><br> SILVERADO SENIOR LIVING, INC.; SILVERADO SENIOR LIVING MANAGEMENT, INC., SUBTENANT 330 NORTH HAYWORTH AVENUE, LLC; LOREN SHOOK, individually; JASON RUSSO, individually; NANCY SARNOFF, a Nominal Defendant only; and Does 1-25, inclusive, <br><br> Defendants. | CASE NO. 2:21-cv-00070-JAK(JPR) <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> **Date:**   **June 21, 2021** <br> **Time:**   **8:30 a.m.** <br> **Crtrm:**   **10B** |

 **TO THE HONORABLE COURT AND ALL PARTIES THROUGH THEIR ATTORNEYS OF RECORD:**

Defendants SILVERADO SENIOR LIVING, INC.; SILVERADO SENIOR LIVING MANAGEMENT, INC.; SUBTENANT 330 NORTH HAYWORTH

1  AVENUE, LLC; LOREN SHOOK and JASON RUSSO ("Defendants"), hereby submits

2  the following Opposition to Plaintiffs' Motion to Remand.

3        This Opposition is based on the Memorandum of Points and Authorities, the

4  Declaration of Jason Russo and the concurrently filed Request for Judicial Notice and

5  exhibits attached thereto, the Notice of Removal and pleadings filed herein, and any other

6  such oral and/or documentary evidence or argument which may be presented at, before,

7  or during the hearing on Plaintiffs' Motion to Remand.

8        Defendants request the following:

9     1.  Oral Argument;

10     2.  Given the potential for new or expanded federal law and policy that could have

11        significant ramifications for future claims implicating the PREP Act,

12        Defendants respectfully request a hearing in this matter; and

13     3.  If the Court is so inclined to grant Plaintiffs' Motion for Remand, Defendants

14        respectfully request the Court issue a temporary stay on remand pursuant to

15        Fed. R. Civ. P 62(a) to allow Defendants their right to appeal. Defendants'

16        removal is based in part on 28 U.S.C. § 1442(a)(1), federal officer jurisdiction

17        such than any action removed pursuant to § 1442(a)(1) is reviewable by appeal.

18
19  DATED:  March 19, 2021              LEWIS BRISBOIS BISGAARD & SMITH LLP

20                      By:    */s/ Rita R. Kanno*

21                         Rima M. Badawiya
                           Lann G. McIntyre

22                         Rita R. Kanno
                           Attorneys for Defendants

23                         SILVERADO SENIOR LIVING, INC. AND
                           SILVERADO SENIOR LIVING MANAGEMENT,

24                         INC., SUBTENANT 330 NORTH HAYWORTH
                           AVENUE, LLC, LOREN SHOOK And JASON

25                         RUSSO

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ..................................................................................... 1

II.    THE PREP ACT COMPLETELY PREEMPTS PLAINTIFFS' CLAIMS. ........... 3

III.   THE PREP ACT AND THE AUTHORITY OF THE HHS SECRETARY ........... 5

IV.    THE PREP ACT IS NOT LIMITED TO ONLY VACCINES AND IS APPLICABLE HERE. ............................................................................... 11

V.     JURISDICTION EXISTS BECAUSE PLAINTIFFS' ALLEGATIONS PRESENT A SUBSTANTIAL, EMBEDDED QUESTION OF FEDERAL LAW ..................................................................................................... 15

VI.    FEDERAL OFFICER JURISDICTION EXISTS ...................................... 18

       A.    Acting Under the Direction of a Federal Officer ............................ 18

       B.    Causal Nexus Exists Between Plaintiffs' Claim and the Actions Taken by Defendants Pursuant to Federal Direction ............................ 23

       C.    Defendants Have a Colorable Defense Based On Federal Law ......... 24

VII.   DIVERSITY JURISDICTION EXISTS ................................................... 24

VIII.  CONCLUSION ..................................................................................... 26

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

**TABLE OF AUTHORITIES**

2

**Page**

**CASES**

*Aetna Health Inc. v. Davila*
  542 U.S. 200 (2004) ..........................................................................................4

*Avco Corp. v. Aero Lodge No. 735, Intern. Ass'n of Machinists & Aerospace Workers*
  390 U.S. 557 (1968) ..........................................................................................4

*Bakalis v. Crossland Savings Bank*
  781 F. Supp. 140 (E.D.N.Y. 1991) ..................................................................20

*Bastien v. AT&T Wireless Services, Inc.*
  205 F.3d 983 (7th Cir. 2000) .............................................................................4

*Beneficial Nat. Bank v. Anderson*
  539 U.S. 1(2003) ................................................................................................5

*Brockway v. Evergreen Intern. Trust*
  496 Fed. Appx. 357 (4th Cir. 2012) ..................................................................4

*Bruesqitz v. Wyeth, LLC*
  562 U.S. 223 (2011) ...........................................................................................9

*Campbell v. Kane, Kessler, P.C.*
  144 F. App'x 127 (2d Cir. 2005) ......................................................................10

*Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*
  467 U.S. 837 (1984) ..................................................................................6, 7, 10

*Dupervil v. Alliance Health Operations, LCC*
  20-CV-4042, 2021 WL 355137 (E.D.N.Y. Feb. 2, 2021) ................................21

*Fields v. Brown*
  No. 6:20-cv-00475, 2021 WL 510620 (E.D. Tex. Feb. 11, 2021) ....................22

*Franchise Tax Board v. Construction Laborers Vacation Trust*
  463 U.S. 1 (1983) ...............................................................................................5

*Fung v. Abex, Corp.*
  816 F. Supp. 569 (N.D. Cal. 1992) ..................................................................20

*Goncalves v. Rady Children's Hosp.*
  865 F.3d 1237 (9th Cir. 2017) .........................................................................18

*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*
  545 U.S. 308 (2005)................................................................................2, 16, 17

*Gunn v. Minton*
  568 U.S. 251 (2013)..........................................................................................16

*In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*
  790 F.3d 457 (3d Cir. 2015) ...............................................................18, 19, 23

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*In re Miles,*
  430 F.3d 1083 (9th Cir. 2005) ................................................................ 4

*In re WTC Disaster Site*
  414 F.3d 352 (2d Cir. 2005) ............................................................. 4, 10

*Jefferson Cty. v. Acker*
  527 U.S. 423 (1999) ............................................................................ 24

*Jones v. Rath Packing Co.*
  430 U.S. 519 (1977) .............................................................................. 9

*Kennedy v. Empire Blue Cross & Blue Shield*
  989 F.2d 588 (2d Cir.1993) ................................................................ 10

*Leytman v. United States*
  No. 19-3929, 2020 WL 6297440, at *2 (2d Cir. Oct. 28, 2020) ........... 10

*Liberty Mut. Ins. Co. v. Ward Trucking Corp.*
  48 F. 3d 742 (3d Cir. 1995) ................................................................. 3

*Lundeen v. Canadian Pacific R. Co.*
  532 F.3d 682 (8th Cir. 2008) ................................................................ 4

*Maglioli v. Andover Subacute Rehabilitation Center*
  No. 20-6605, 2020 WL 4671091 (D.N.J. 2020) ............................... 8, 14

*Merrell Dow Pharm. Inc. v. Thompson*
  478 U.S. 804 (1986) ........................................................................ 3, 16

*Merrell Dow Pharmaceuticals, Inc. v. Thompson*
  478 U.S. 804 (1986) .............................................................................. 3

*Metropolitan Life Ins. Co. v. Taylor*
  481 U.S. 58 (1987) ................................................................................ 4

*Milam v. State Farm Mut. Auto. Ins. Co.*
  972 F.2d 166 (7th Cir.1992) ............................................................... 25

*Papp v. Fore-Kast Sales Co.*
  842 F.3d 805 (3rd Cir. 2016) .............................................................. 19

*Parker v. St. Lawrence County Public Health Dept.*
  102 A.D.3d 140 (N.Y. App. Div. 2012) ................................................. 9

*Railway Labor Executives' Ass'n v. Pittsburgh & Lake Erie R.R. Co.*
  858 F.2d 936 (3d Cir. 1988) ................................................................. 5

*Ruppel v. CBS Corp.*
  701 F.3d 1176 (7th Cir. 2012) ............................................................ 24

*Ryan v. Dow Chemical Co.*
  781 F. Supp. 934 (E.D.N.Y. 1992) ...................................................... 20

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Saldana v. Glenhaven Healthcare LLC,*
    No. CV 20-5631 FMO (MAAx) 2020 U.S. Dist. LEXIS 216490 (C.D. Cal. Oct. 14, 2020)......14

*Smallwood v. Allied Van Lines, Inc.*
    660 F.3d 1115 (9th Cir. 2011 ...................................................................................4

*Smith v. Indus. Valley Title Ins. Co.*
    957 F.2d 90 (3d Cir. 1992) ...............................................................................16, 25

*Spear Marketing, Inc. v. BancorpSouth Bank*
    791 F.3d 586 (5th Cir. 2015) ...................................................................................4

*Steinlage ex rel Smith v. Mayo Clinic Rochester*
    435 F.3d 913 (8th Cir. 2006) .................................................................................25

*Tank v. Chronister*
    160 F. 3d 597 (10th Cir.1998) ...............................................................................25

*U.S. Express Lines Ltd. v. Higgins*
    281 F.3d 383 (3d Cir. 2002) ...................................................................................3

*Vaden v. Discover Bank*
    556 U.S. 49 (2009) ...................................................................................................4

*Watson v. Philip Morris Cos.*
    551 U.S. 142 (2007)........................................................................................19, 20

*Webb v. Banquer*
    19 F. Supp.2d 649 (S.D. Miss. 1998) ...................................................................26

*Willingham v. Morgan*
    395 U.S. 402, 407 (1969) ......................................................................................24

*Winn v. Panola-Harrison Elec. Cooperative, Inc.*
    966 F.Supp.481(ED Tex. 1997)............................................................................26

*Winters v. Diamond Shamrock Chem. Co.*
    149 F.3d. 387 (5th Cir. 1998) ...........................................................................19, 20

**STATUTES**

28 U.S.C. § 1441(a) ..............................................................................................3
28 U.S.C. § 1442(a)(1) ......................................................................................2, 18
42 U.S.C. § 247d-6d (b)(8)................................................................................6, 17
42 U.S.C. § 247d-6d(a)........................................................................................5, 6
42 U.S.C. § 247d-6d(a)(1)................................................................................passim
42 U.S.C. § 247d-6d(b)....................................................................................5, 6, 8
42 U.S.C. § 247d-6d(b)(1) .....................................................................................5
42 U.S.C. § 247d-6d(b)(4).....................................................................................5
42 U.S.C. § 247d-6d(b)(7).....................................................................................5
42 U.S.C. § 247d-6d(i)(1).....................................................................................12
42 U.S.C. § 5195c(b)(3) ......................................................................................19
42 U.S.C. § 5195c(e)...........................................................................................19
Cal. Code Civ. P. § 337.11..................................................................................25
Cal. Code Civ. P. § 377.10 (b)............................................................................25

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Cal. Code Civ. P. § 377.10(a) ..................................................................... 25
Cal. Code Civ. P. § 377.60 ......................................................................... 26

## OTHER AUTHORITIES

1 Moore's Manual, Federal Practice & Procedure § 5.10 (2020) ............................ 17

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**TABLE OF AUTHORITIES**

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

The issues in this case are of national importance and a unified federal response to those issues is paramount for both Defendants here and other assisted living homes across the nation. Defendant rightfully removed this case to federal court on two grounds: 1) Federal Question jurisdiction based on complete preemption under the Public Readiness and Emergency Preparedness Act (the "PREP Act") and the existence of a substantial federal question raised by Plaintiffs' Complaint; and 2) Federal Officer jurisdiction based, on the fact that Defendants, as a "critical infrastructure" business, were at all relevant times acting at the specific direction and within the oversight of the Federal government, including the Department of Health and Human Services ("HHS"), Centers for Medicare and Medicaid Services ("CMS") and the Center for Disease Control and Prevention ("CDC").

This case involves the death of 94 year old Albert Sarnoff ("Decedent"), who allegedly contracted COVID-19 during his residency at Silverado – Beverly Place, sometime in March 2020. The Complaint alleges causes of action for (1) Elder Abuse and Neglect (Welf. & Inst. Code, § 15600, *et seq.*) and (2) Wrongful Death. See Dkt. #1-3.  Defendants timely removed this action on the basis of federal question, federal officer, and diversity jurisdiction. See Dkt. #1.

Plaintiffs now seek remand, contending that the PREP Act does not apply, arguing that the allegations in the Complaint do not relate to covered countermeasures. However, it is clear from the face of Plaintiffs' Complaint that their claims fall under the Act. Plaintiffs allege that Defendants caused Albert Sarnoff's death from COVID-19 by failing to implement adequate and appropriate safety measures to protect residents and employees "from the health and safety hazard posed by COVID-19" by, *inter alia*, not training or providing staff with "proper protective equipment and sanitation supplies to keep…residents safe." See Dkt. #1-3, ¶¶5, 10, 59, 61, 65. By their very nature, these allegations relate to the type, sufficiency, and manner of use, administration and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

allocation of PPE and other covered countermeasures by Defendants, bringing this case squarely within the ambit of the PREP Act.

Plaintiffs further contend that the allegations against Defendants involve "failures to act" and, therefore, the allegations do not fall within the purview of the PREP Act. However, an omission or failure to administer a Covered Countermeasure can fall within the PREP Act's protections when it is based on conscious decision making. Under the PREP Act, if the alleged omissions were due to a **"[p]rioritization or purposeful allocation of a Covered Countermeasure**, particularly if done in accordance with a public health authority's directive, [the claims] can fall within the PREP Act…" especially in the face of scarcity of countermeasure resources. [Emphasis added.] (RFJN-Ex. "5", Fourth Amendment to the Declaration of Health and Human Services ("HHS") under the PREP Act, 85 Fed. Reg. 79191, 79194, and 79197.)

Moreover, in response to litigation regarding these very issues, the HHS Secretary issued a Fourth Amendment to his Declaration under the PREP Act, on December 3, 2020. Therein, the HHS Secretary confirmed that COVID-19 cases involving interpretation of the PREP Act and/or Covered Countermeasures must be heard in the Federal court system, as they raise substantial federal issues within the ambit of the Supreme Court's holding in *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.,* 545 U.S. 308 (2005). See RFJN Ex. "5" – "the interpretation of a federal statute [ ] actually is in dispute in the litigation and is so important that it sensibly belongs in federal court." 545 U.S. at 315.

On January 8, 2021, the Office of the General Counsel ("OGC") for the Department of HHS also issued Advisory Opinion 21-01, which is incorporated into the Secretary's Declaration and further confirms this reading of the Fourth Amendment to his Declaration under the PREP Act. See RFJN Ex. "29", pg. 4. Moreover, the Acting HHS Secretary under the Biden administration re-affirmed the breadth and the complete preemptive effect of the PREP Act. In other words, both the Trump and Biden

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Administrations in rare form found common ground on this issue despite disagreements on many others: namely, that the PREP Act is a complete preemption statute.

In the most recent ruling in the Central District of California on this issue, on February 10, 2021, in *Garcia v. Welltower OpCo Group LLC*, No. 8:20-cv-02250 (C.D. Cal.), a court in the Central District held that the PREP Act is indeed a complete preemption statute that governs claims. The *Garcia* court therefore denied the plaintiffs' motion to remand and dismissed plaintiffs' claims pursuant to the explicit terms of the PREP Act. See RFJN Ex. "32." This Court should rule in accordance with Garcia and deny Plaintiffs' improper motion to remand this case to state court.

## II.   THE PREP ACT COMPLETELY PREEMPTS PLAINTIFFS' CLAIMS.

Pursuant to 28 U.S.C. § 1441(a), "[e]xcept as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." *Liberty Mut. Ins. Co. v. Ward Trucking Corp*., 48 F.3d 742, 745 (3d Cir. 1995) (quoting 28 U.S.C. § 1441(a)). Federal jurisdiction is typically governed by the "well-pleaded complaint" doctrine. *See Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804, 808 (1986). However, while the content of Plaintiffs' "well-pleaded complaint" typically determines whether an action arises under federal law, the absence of an express federal claim is not necessarily fatal to federal "arising under" jurisdiction. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 389 (3d Cir. 2002) (citing *Merrell Dow Pharm. Inc. v. Thompson*, 478 U.S. 804, 808 (1986).) In certain circumstances the preemptive force of federal law can completely preempt state law causes of action. *Dawson v. Ciba-Geigy Corp, USA*, 145 F. Supp. 2d 565, 568 (D. N.J. 2001).

The doctrine of complete preemption as a basis for federal-question removal is not a novel concept. Courts have recognized the Labor Management Relations Act, the Employee Retirement Income Security Act ("ERISA") and the National Bank Act as a

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

complete-preemption statutes for decades. *See*, *e.g.*, *Avco Corp. v. Aero Lodge No. 735, Intern. Ass'n of Machinists & Aerospace Workers*, 390 U.S. 557, 559 (1968); *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 7–11(2003); *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004). Moreover, there are numerous other statues that lower courts have found as affording complete preemption.[1]

Complete preemption permits removal of an action to federal court when a federal statute wholly displaces state law causes of action, even if the federal statute is raised as a defense. As the Tenth Circuit has explained:

> We read the term [complete preemption] not as a crude measure of the breadth of the preemption (in the ordinary sense) of a state law by a federal law, but rather as a description of the specific situation in which the federal law not only preempts a state law to some degree but also substitutes a federal cause of action for the state cause of action, thereby manifesting Congress's intent to permit removal. *Schmeling v. NORDAM*, 97 F.3d 1336, 1342 (10th Cir. 1996).

Complete preemption or "displacing" preemption exists when the force of federal law is so powerful it displaces any state law cause of action and leaves room only for federal law. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-65(1987). Complete preemption exists when (1) the statute relied upon by defendant as preemptive contains civil enforcement provisions within the scope of which the plaintiff's state claim falls; and (2) there is a "clear indication of Congressional intention to permit removal despite the plaintiff's exclusive reliance on state law." *Railway Labor Executives' Ass'n v.*

---

[1] Transportation Safety and System Stabilization Act (*In re WTC Disaster Site*, 414 F.3d 352 (2d Cir. 2005)); the Bankruptcy Code (*In re Miles*, 430 F.3d 1083 (9th Cir. 2005)); the Carmack Amendment to the Interstate Commerce Act (*see*, *e.g.*, *Smallwood v. Allied Van Lines, Inc*., 660 F.3d 1115 (9th Cir. 2011); the Copyright Act (*see*, *e.g.*, *Spear Marketing, Inc. v. BancorpSouth Bank*, 791 F.3d 586 (5th Cir. 2015); the Federal Communications Act (*see*, *e.g.*, *Bastien v. AT&T Wireless Services, Inc*., 205 F.3d 983 (7th Cir. 2000); the Federal Deposit Insurance Act (*Vaden v. Discover Bank*, 556 U.S. 49 (2009); the Federal Railroad Safety Act (*see*, *e.g.*, *Lundeen v. Canadian Pacific R. Co*., 532 F.3d 682 (8th Cir. 2008)); and the Securities Litigation Uniform Standards Act (SLUSA) (*see*, *e.g.*, *Brockway v. Evergreen Intern. Trust*, 496 Fed. Appx. 357 (4th Cir. 2012).

1   *Pittsburgh & Lake Erie R.R. Co.*, 858 F.2d 936, 942 (3d Cir. 1988) (citing *Franchise*

2   *Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 24 (1983)). If the two-

3   part test is satisfied, the state law claim is "recharacterized" as a federal claim and

4   removal is proper. *Beneficial Nat. Bank v. Anderson,* 539 U.S. 1, 11 (2003).

5   **III.    THE PREP ACT AND THE AUTHORITY OF THE HHS SECRETARY**

6          The PREP Act is also a complete preemption statute. And Defendants removed the

7   state court action to federal court asserting, among other reasons, that the PREP Act

8   preempts Plaintiffs' state law claims. Dkt. #1. Under the PREP Act, Congress provided

9   for exclusive federal jurisdiction for claims relating to the administration or use of

10  covered countermeasures with respect to a public health emergency. This legislation

11  empowers HHS to issue a declaration providing immunity for "covered persons" to suits

12  and liability under federal and state law. Congress also endowed HHS with the duty to

13  issue a defining Declaration that controls the scope of PREP Act protections. § 247d-

14  6d(a)(1), (b). Specifically, 42 U.S.C. § 247d-6d(a)(1) provides as follows:

15      Subject to the other provisions of this section, ***a covered person shall be
        immune from suit and liability under Federal and State law with respect***
16      ***to all claims for loss caused by, arising out of, relating to, or resulting***
        ***from the administration to or the use by an individual of a Covered***
17      ***Countermeasure*** if a declaration under subsection (b) has been issued with
        respect to such countermeasure. (Emphasis added.) Section (b) of the PREP
18      Act provides that if the Secretary makes a determination that a disease or
        other health condition or other threat to health constitutes a public health
19      emergency, the Secretary may make a declaration setting forth that
        subsection (a) is in effect with respect to the manufacture, testing,
20      development, distribution, administration or use of one or more Covered
        Countermeasures under conditions as the Secretary may specify in the
21      declaration or amendment thereto.

22  42 U.S.C. § 247d-6d(b)(1) and (4).

23         The PREP Act further provides that "[n]o court of the United States, or of any

24  State, shall have subject matter jurisdiction to review, whether by mandamus or

25  otherwise, any action by the Secretary under this subsection." *Id.* at 247d-6d(b)(7). Under

26  the PREP Act, Congress not only provided immunity for claims arising out of Covered

27  Countermeasures, it delegated regulatory authority to HHS.  Indeed, where Congress has

28  expressly delegated interpretive authority to an agency, that agency's interpretative

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   proclamations are controlling on the Federal courts. *See Chevron USA, Inc. v. Natural*

2   *Resources Defense Council, Inc.*, 467 U.S. 837, 843-844 (1984).

3       There is no question that the PREP Act broadly preempts all state law claims

4   falling within its purview. Under 42 U.S.C.A. § 247d-6d(a)(1), a "covered person shall

5   be immune from suit and liability under Federal and State law with respect to all claims

6   for loss caused by, arising out of, relating to, or resulting from the administration to or

7   use by an individual of a covered countermeasure if a declaration . . . has been issued

8   with respect to such countermeasure." In the subsection conspicuously titled,

9   "PREEMPTION OF STATE LAW", the statute provides, in pertinent part, that "[d]uring

10  the effective period of a declaration . . . no State or political subdivision of a State may

11  establish, enforce, or continue in effect with respect to a covered countermeasure any

12  provision of law or legal requirement that—(A) is different from, or is in conflict with,

13  any requirement applicable under this section; and (B) relates to the. . . dispensing or

14  administration. . . of the covered countermeasure. . . " 42 U.S.C § 247d-6d (b)(8).

15      The PREP Act not only provides for immunity for Plaintiffs' claims against

16  Defendants, but simultaneously details a comprehensive claims compensation regime.

17  Much like the workers compensation system and the National Vaccine Compensation

18  Program, it specifies a particular court to hear claims relating to narrowly defined

19  exceptions to the immunity provisions. This is in accord with one of the stated goals of

20  the PREP Act: to provide for a compensation system "in place of expensive and uncertain

21  litigation." See 42 U.S.C. § 247d-6d(a). The PREP Act expresses its clear intention to

22  supersede or preempt state-specific decisions on the merits of claims related to covered

23  countermeasures by explicitly providing as follows:

24          "no State . . . may establish, enforce, or continue in effect with respect to a
           covered countermeasure any provision of law or legal requirement that . . .
25          (A) is different from, or is in conflict with, any requirement applicable
           under this section; and (B) relates to the . . . use, . . . dispensing, or
26          administration by qualified persons of the covered countermeasure." 42
           U.S.C. § 247d-6d(b)(8).

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

The PREP Act clearly provides as the **sole remedy** for a loss or injury the Countermeasures Injury Compensation Program ("CICP"), a no-fault, speedy compensation system intended to replace uncertain costly litigation. 42 U.S.C. 247d-6d(a)(1). The CICP even contains provisions for circumstances in which a plaintiff chooses not to accept the compensation ordered pursuant to the CICP: in such circumstances, the injured individual is authorized to pursue a tort claim, but it must be filed in the United States District Court for the District of Columbia, may only be pursued if the claim involves willful misconduct, and only if it meets several other requirements under the PREP Act. 42 U.S.C. 247d-6d-(d-e).

On March 10, 2020, HHS Secretary Azar issued a Declaration invoking the PREP Act in response to the burgeoning COVID-19 pandemic. See RFJN Ex. "2". Secretary Azar subsequently issued an Amended Declaration under the PREP Act. See RFJN Ex. "3". On June 4, 2020, Secretary Azar further amended the March 10, 2020 Declaration to clarify that Covered Countermeasures under the Declaration include qualified products that limit the harm COVID-19 might otherwise cause. RFJN Ex. "4".

**OGC Advisory Opinion 21-01,** which is entitled to *Chevron* deference, makes clear **the PREP Act is a "complete preemption" statute**. "The sine qua non of a statute that completely preempts is that it establishes either a federal cause of action, administrative or judicial, as the only viable claim or vests exclusive jurisdiction in a federal court. The PREP Act does both." See RFJN Ex. "30". [2]

On **January 28, 2021**, the Acting HHS Secretary for the Biden Administration issued the Fifth Amendment to the Declaration invoking the PREP Act. The Fifth Amendment to the Declaration explicitly cites to the Declarations and Amendments

---

[2] The Fourth Amendment to the Secretary's Declaration further provides that:

> ". . . the Declaration must be construed in accordance with the Department of Health and Human Services (HHS) Office of the General Counsel (OGC) Advisory Opinions on the Public Readiness and Emergency Preparedness Act and the Declaration ("Advisory Opinions").


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   issued during the Trump Administration. The Amendment further reiterates that "[t]he

2   plain language of the Prep Act makes clear that there is **complete preemption of state**

3   **law**" and "preemption of State law is justified to respond to the nation-wide public

4   health emergency caused by COVID-19…" RFJN Ex. "30".[Emphasis added.]

5        And in a Statement of Interest recently submitted in *Bolton v. Gallatin Center for*

6   *Rehabilitation & Healing, LLC*, Case 3:20-cv-00683, currently pending in the Middle

7   District of Tennessee, the United States also asserts **the PREP Act is a complete**

8   **preemption statute** with respect to the administration or use of covered

9   countermeasures. **"Two key provisions of the PREP Act operate together to**

10  **demonstrate its completely preemptive nature: the immunity provision and the**

11  **exclusive alternative remedy provision**." See RFJN Ex. "31".[3] Such an interpretation

12  is in "accord[] with the reasons Congress enacted the law"—to enhance an effective

13  response to a national health emergency. *Id.*

14       The OGC Advisory Opinion and position taken by the United States in *Bolton* are

15  supported by the plain language of the PREP Act. First, the PREP Act clearly preempts

16  any state law that runs afoul of the immunity granted to persons or entities thereunder.

17  Under 42 U.S.C.A. § 247d-6d(a)(1), a "covered person shall be immune from **suit and**

18  **liability** under Federal **and State law** with respect to **all claims for loss** caused by, arising

19  out of, relating to, or resulting from the administration to or use by an individual of a

20

21

22  [3] The Statement of Interest was filed in a case involving claims arising out of the
    defendant facility's response to the COVID-19 pandemic. The United States stated it "has

23  an interest in having the PREP Act applied uniformly across jurisdictions and across
    public health emergencies." (*Id.*) The United States described the district court's decision

24  in *Maglioli v. Andover Subacute Rehabilitation Center*, No. 20-6605, 2020 WL 4671091
    (D. N.J. 2020), appeal docketed, No. 20-2834 (3d Cir. Sept. 10, 2020), as mistakenly

25  framing the preemption inquiry by inappropriately focusing on the express conflict-
    preemption provision in § 247d-6d(b)(8) and relegating subdivision (a) to "mere

26  'background'." (*Id.* at 11.) "This approach gets it backwards: subsections (a) and (d)
    operate together to demonstrate that Congress intended an exclusive federal cause of

27  action for 'claims for 'within (a)'s ambit, whereas (b)(8) expressly preempts … *other*
    laws, legal requirements, and therefore claims beyond (a)'s ambit." (*Id.*; See also RFJN

28  – Ex. "32".)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

covered countermeasure if a declaration . . . has been issued with respect to such countermeasure."

The broad preemptive impact of the PREP act was expressly acknowledged by Supreme Court Justices Sotomayor and Ginsburg in the dissent in *Bruesqitz v. Wyeth, LLC*, 562 U.S. 223 (2011), where they referenced it in comparison to the language of the National Childhood Injury Vaccine Act. 56 U.S. 223, 253 (2011) (noting that the PREP Act's "categorical (e.g., 'all') and/or declarative language (e.g., 'shall')" indicates a clear intent to preempt all claims within its scope.)

In a most recent ruling issued by a Federal District Court regarding PREP Act preemption since the Fourth Amendment and January 8, 2021 Advisory Opinion, the Honorable Judge James V. Selna, of the U.S. District Court for the Central District of California, agreed with HHS' interpretation (set forth in the January 8, 2021 OGC AO), the PREP Act is complete preemption statute. *Garcia v. Welltower OpCo Group LLC, No. 8:20-cv-02250 (C.D. Cal.).*

The New York state appellate court in *Parker v. St. Lawrence County Public Health Dept.*, 102 A.D.3d 140 (N.Y. App. Div. 2012) addressed the issue of Federal preemption for PREP Act claims and correctly found that federal law preempted the plaintiff's state law claims for negligence and battery arising from the administration of the H1N1 vaccine without consent. The Court noted Federal preemption "may be either expressed or implied, and "is compelled whether Congress' command is explicitly stated in the statute's language or implicitly contained in its structure and purpose." *Id.* (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 525 (1977)). The Court in *Parker* correctly concluded that the PREP Act contained an "express preemption clause" and that this plain reading "contains the best evidence of Congress' preemptive intent." *Id.*

Plaintiffs incorrectly argue that Defendants are asserting the PREP Act as an affirmative defense to Plaintiffs' claims – in other words, Plaintiffs argue that the applicability of the PREP Act in and of itself is not sufficient to establish federal question jurisdiction. This understanding of the PREP Act is mistaken. The Act occupies *the entire*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*field* for cases that allege the use, misuse, or nonuse of covered countermeasures during a pandemic and, as such, is much more than an affirmative defense. The PREP Act explicitly provides immunity for operations like Silverado – Beverly Place's here.

All Advisory Opinions and the Declarations of the HHS Secretary must be weighed in accord with the principles of *Chevron* deference, which requires this Court defer to HHS' interpretation of the PREP Act. See *Chevron USA, Inc. v. Natural Resources Defense Council, Inc.*, 467 US 837, 843-844 (1984). *See, e.g.*, *Campbell v. Kane, Kessler, P.C.*, 144 F. App'x 127, 130 (2d Cir. 2005) (discussing exclusive grievance and arbitration procedures of Labor Management Relations Act); *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir.1993) (exhaustion of administrative remedies are required under Employee Retirement Income Security Act); *In re WTC Disaster Site*, 414 F.3d 352, 377 (2d Cir. 2005) (discussing exclusive federal cause of action for damages arising out of September 11th terrorist attacks, including victim's compensation fund, under Air Transportation Safety and System Stability Act); and *Leytman v. United States*, No. 19-3929, 2020 WL 6297440, at *2 (2d Cir. Oct. 28, 2020) (Federal Tort Claims Act requires that claim be brought before appropriate federal agency for adjudication before judicial action may be instituted).

The Circuit in *Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Prot. Agency*, 846 F.3d 492, 507 (2d Cir. 2017), emphasized the importance of judicial deference where agency action is sound and reasoned. Therein, the court explained that under *Chevron*, the first question is: "'whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.'" *Id*. at 507, *citing Chevron*, 467 U.S. at 842–43. If the statutory language is silent or ambiguous, however, courts proceed to the second step, where "'the question for the court is whether the agency's answer is based on a permissible construction of the statute'" at issue. *Id*., *citing Chevron*, 467 U.S. at 843. If the agency's interpretation is not "'arbitrary, capricious, or manifestly contrary to the statute,'" *Id.,*

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*citing Chevron*, 467 U.S. at 844, the court will accord deference to the agency's interpretation so long as it is supported by a reasoned explanation, and "so long as the construction is "'a reasonable policy choice for the agency to make.'" *Id.*

Here, HHS is charged with administering the PREP Act during a national public health emergency. Its interpretation that the PREP Act is a complete preemption statute is based on the framework of the PREP Act, including the purpose and scope of the Act as applied to the COVID-19 pandemic and the Act's exclusive federal remedial scheme. This interpretation is sound and reasonable, especially since other complete preemption and original jurisdiction statutes have analogous remedial schemes that involve both administrative and judicial remedies.

## IV.     THE PREP ACT IS NOT LIMITED TO ONLY VACCINES AND IS APPLICABLE HERE.

Plaintiffs contend the PREP Act only applies to claims related to vaccine administration and use. See Dkt. #14 at 14-16. Plaintiffs' argument against complete preemption depends solely on a narrow and unsustainable construction of the PREP Act and conveniently ignore the invocation of the PREP Act in response to the COVID-19 pandemic and the federal government's efforts to stop the spread of the virus.

The recent actions of the federal government in issuing declarations under the PREP Act and other legislation in response to COVID-19 illustrate the absurdity of this contention and highlight that the issues raised by Plaintiffs' lawsuit are preempted by the PREP Act. It is true, of course, that the PREP Act defines, in pertinent part, a "covered countermeasure" as "[t]he manufacture, testing, development, distribution, dispensing, and…the administration and usage of the pandemic countermeasures A H5N1, H2, H6, H7, H9, and 2009 H1N1 **vaccines** and any associated adjuvants." Fed. Reg. 74, 30294 (June 25, 2009). The Act is also clear that it applies to "covered countermeasures," which by definition also include: "(1) a qualified pandemic or epidemic product (as defined in § 247d-6d (i) (7)) . . . or (4) a respiratory protective device that is approved by the National Institute for Occupational Safety and Health ("NIOSH") and that the Health and

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  Human Service Secretary determines to be a priority for use during a public health
2  emergency declared under section 247d." 42 U.S.C. § 247d-6d(i)(1).

3  Narrowly reading only these provisions while simultaneously ignoring the
4  COVID-19 pandemic that has ravaged the United States for over a year – and the federal
5  government's actions taken in response to it - makes little sense, however. In recognition
6  of the public health emergency ongoing in the United States, the General Counsel for
7  HHS issued an advisory opinion om March 10, 2020 to address questions and concerns
8  regarding the scope of PREP Act immunity related to the COVID-19 pandemic. In
9  pertinent part, the Opinion summarized the requirements to meet the definition of a
10 qualified COVID-19 product.

11 Attached as Appendix A to the Advisory Opinion is a list of the "covered
12 countermeasures" for which emergency use authorizations have been issued by the
13 United States Food and Drug Administration in light of the COVID-19 pandemic. See
14 RFJN Ex. "10". The list includes **twelve pages** of approved COVID-19 test kits, and
15 further provides that face shields, gowns, shoe covers, non-surgical isolation gowns,
16 surgical caps, properly labeled non-surgical masks, and certain non-NIOSH approved
17 respirators are all covered by an emergency use authorization.

18 Further, under the Act, a private sector employer or other person can be a "program
19 planner" when it carries out prescribed activities during the COVID-19 pandemic. See
20 RFJN Ex. "2." HHS recently issued a letter which provides that a nursing home
21 community meets the definition of a "program planner" to the extent that it supervises or
22 administers a program with respect to the administration, dispensing, distribution,
23 provision or use of a qualified pandemic or epidemic product. See RFJN Ex. "6". "[A]
24 covered person shall be immune from **suit and liability under Federal and State**
25 **law**…" § 247d-6d(a)(1)(emphases added). Defendants qualify as a "covered person"
26 under the PREP Act.

27 Moreover, Plaintiffs allege that Defendants are subject to the licensing
28 requirements of state of California governing RCFEs. Dkt. #1-3 ¶¶ 18, 21-25, 43. As

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

12                                                2:21-cv-00070-JAK(JPR)
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

such, Silverado—Beverly Place was required to implement universal precautions to prevent infections. See Cal. Code Regs. Tit. 22, § 87101(u)(1). Further, facility staff were among the class of workers directed to continue to work and to take precautions against the spread of COVID-19.  Silverado-Beverly Place employs licensed nursing personnel, including Registered Nurses and Licensed Vocational Nurses, who were authorized to prescribe, administer, or dispense the covered countermeasures (i.e., PPE including facemasks, gloves, gowns, face shields, N95 masks, and COVID-19 testing) under the laws of the State of California. In addition, Silverado—Beverly Place necessarily provides a facility to administer or use such covered countermeasures.[4] As alleged in the Complaint, Silverado—Beverly Place supervised and administered an infection control program using covered countermeasures, which included, *inter alia*, plans and decisions with respect to how best to utilize and optimize supplies of PPE and COVID-19 testing kits, and whether and when the use of such countermeasures is appropriate. Dkt. #1-3, ¶¶ 3-5, 8, 10-11, 46-54.

Plaintiffs contend in the Complaint "Defendants began making representations that they too were taking the virus seriously and implementing precautions as **recommended by the CDC and CDPH**," and that Defendants assured staff and residents that they were "'**taking significant precautions** and continuing to make adjustments to do all we can to limit our resident's exposure and **flatten the curve**.'" Dkt. #1-3, ¶¶ 46, 51. [Emphasis added.] Plaintiffs allege that Albert Sarnoff's case illustrates Defendants violating their own policies and warnings regarding the spread of the virus. *Id.* at ¶11. Such claims pertain to how Defendants administered, distributed and used PPE within the facility, not that there was an outright failure to utilize PPE, a claim that is ludicrous on its face. Defendants did have and were utilizing PPE in compliance with federal government

---

[4] As discussed, *supra*, it is undisputed that Silverado—Beverly Place served as a facility at which PPE, symptom screening, and COVID-19 testing, *inter alia*, were administered or used. See Dkt.1-3, ¶¶ 3-5, 8, 10-11, 48-49, 51, 53-54.

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   guidelines. See Ex. "A" to Russo Declaration.

2       Plaintiffs argue that the PREP Act does not apply to inaction with respect to

3   covered countermeasures, citing *Maglioli v. Andover Subactue Rehabilitation Ctr.* 2020

4   Lexis 145055 at *1 (D. N.J. August 12, 2020) and *Saldana v. Glenhaven Healthcare*

5   *LLC,* No. CV 20-5631 FMO (MAAx), 2020 U.S. Dist. LEXIS 216490 (C.D. Cal. Oct.

6   14, 2020) in support. This understanding of the current state of the law is woefully

7   incomplete.

8       First, Plaintiffs fail to mention that these courts issued their decision without

9   having had the benefit of reviewing the December 3, 2020, HHS Fourth Amended

10  Declaration under the PREP Act, effective as of February 4, 2020; the January 8, 2021

11  HHS Advisory Opinion; or the January 28, 2021, HHS Fifth Amended Declaration under

12  the PREP Act. Because the decisions in *Saldana* and *Maglioli* were rendered prior to the

13  issuance of controlling interpretations of the PREP Act by the agency charged by

14  Congress with administering the Act, their reasoning cannot be relied upon as

15  incomplete. This is especially true given the procedural posture of both cases: a Notice

16  of Appeal has been filed in both *Saldana* and *Maglioli*. A stay of enforcement of the

17  Order has been issued in *Maglioli*.

18      Even if this court does choose to rely upon the *Saldana* and *Maglioli* decisions as

19  persuasive authority, neither decision properly accounted for the scope of HHS Secretary

20  Azar's earlier March 10, 2020 Declaration, which distinguishes itself from the much

21  older declaration previously issued by HHS with respect to the H1N1 vaccine. In his

22  March 10, 2020 Declaration, Secretary Azar notes that the "PREP Act does not explicitly

23  define the term 'administration' but does assign the Secretary the responsibility to

24  provide relevant conditions in the Declaration." In Section IX, Secretary Azar defines

25  "administration of a covered countermeasure" as the "physical provision of the

26  countermeasures to recipients **or activities and decisions directly relating to public**

27  **and private delivery, distribution and dispensing of the countermeasures to**

28  **recipients**; **management and operation of countermeasure programs; or**

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**management and operation of locations for purpose of distributing and dispensing countermeasures.**" [Emphasis added.] This broad definition of "administration of a covered countermeasure" encompasses, *inter alia*, operational planning and decision-making with respect to how best to conserve and use PPE and COVID-19 testing kits during a time period when there was a critical shortage of such materials.

A uniform interpretation of the PREP Act's provisions is critical, both for Silverado – Beverly Place here as well as other such assisted living facilities nationwide. The Complaint specifically raises allegations relating to COVID-19 testing and PPE, which are covered countermeasures under the PREP Act. Plaintiffs' allege a delay in testing Albert Sarnoff for COVID-19 and deficiencies in screening and the use of PPE. Dkt. #1-3, ¶¶ 5, 8, 43. As general as these claims are, by their very nature relate to the use of covered countermeasures, including PPE and COVID-19 testing, and/or the management and operation of Silverado – Beverly Place's countermeasures program, for which Defendants have immunity under the PREP Act. Plaintiffs cannot allege Albert Sarnoff's death was due to a failure to properly implement an effective infection control program to prevent COVID-19 without implicating covered countermeasures under the PREP Act, since such measures are the main line of defense against and the centerpiece of any infection control program used to prevent the spread of the virus that causes COVID-19. See RFJN Exs. "10" to "28". As such, Defendants' covered countermeasure programs are covered under the PREP Act and Secretary Azar's March 10, 2020 declaration, and should be heard exclusively in federal court.

## V.    JURISDICTION EXISTS BECAUSE PLAINTIFFS' ALLEGATIONS PRESENT A SUBSTANTIAL, EMBEDDED QUESTION OF FEDERAL LAW.

As discussed more fully below, this Court has subject matter jurisdiction to hear Plaintiffs' claims: here, Defendants' removal of this action to federal court was proper, as this Court has the authority to review Plaintiffs' claims under both Federal Question jurisdiction as well as Federal Officer jurisdiction.

A significant line of precedent sustains federal question jurisdiction over state law claims that present a substantial, embedded question of federal law. *See, e.g., Merrell Dow Pharm., Inc. v. Thompson*, 478 U.S. 804, 807-08 (1986); *Smith v. Indus. Valley Title Ins. Co.*, 957 F.2d 90, 92-93 (3d Cir. 1992). The standard for establishing jurisdiction was discussed at length in *Grable*.

In *Grable*, the Supreme Court set forth a two-step process for determining whether a state law claim "arises under" federal law. First, the state law claim must "necessarily raise a stated federal issue, actually disputed and substantial." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 312 (2005). Second, federal courts must be able to entertain state law claims "without disturbing a congressionally approved balance of state and federal judicial responsibilities." *Gunn v. Minton*, 568 U.S. 251, 258 (2013) (citing *Grable*, 545 U.S., at 313-14). The claims here satisfy both prongs of the test for claims "arising under" federal law established by the Supreme Court under *Grable*, and as such were properly removed to federal court.

In the Fourth Amendment to the Declaration under the PREP Act, the HHS Secretary made clear that COVID-19 cases involving interpretation of the PREP Act and/or Covered Countermeasures are to be in the federal court system or in the administrative alternative remedy Congress provided.

Plaintiffs Complaint challenges Defendants' implementation of infection control practices in preventing the spread of COVID-19 after "Patient Zero" was admitted to the facility. Plaintiffs couch their allegations with regard to Defendants' infection control procedures as "failures" in an effort to side-step the PREP Act protections that are afforded to Defendants. Dkt. #1-3, ¶¶3, 11-12, 65; Dkt. #14, p. 13. For example, Plaintiffs claim Albert Sarnoff was exposed to COVID-19 at a time when the only "covered countermeasures" available were PPE, the market for which was experiencing a critical shortage at the time. Dkt #1-3, ¶¶4, 42, 44, 65. All of these allegations are squarely covered by the PREP Act, the HHS Declarations, and their federal jurisdiction and immunity protections.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Removal of any case involving the interpretation of the PREP Act is proper in accordance with the Supreme Court holding in *Grable*.

> The world is facing an unprecedented pandemic. To effectively respond, there must be a **more consistent** pathway for Covered Persons to manufacture, distribute, **administer** or use Covered Countermeasures across the nation and the world. Thus, there are substantial federal legal and policy issues, and substantial federal legal and policy interests within the meaning of *Grable & Sons Metal Products, Inc. v. Darue Eng'g. & Mf'g.*, 545 U.S. 308 (2005), in having **a uniform interpretation of the PREP Act**. [Emphasis added.] See RFJN Ex. 5.

There is a clear federal government interest in providing a federal forum for the determination of the legal issues relating to critical infrastructure businesses' response to an ongoing national pandemic, as well as to interpret the federal government's response to those issues in the form of responsive legislation, rules, and regulations. There can be no doubt that there is a substantial and compelling interest in having these issues interpreted at the federal level: the federal courts are uniquely positioned to interpret Congressional intent as well as protect the interests of the federal government.

In deciding these issues, the Court would not "disturb any congressionally approved balance of federal and state judicial responsibilities" by retaining jurisdiction in this matter, thus satisfying the second *Grable* federal question prong. The issues under the PREP Act are not issues that Congress intended to be decided at the state court level. The plain language of the statute plainly asserts broad federal authority over the issues arising from the Act, and seeks to all but eliminate any semblance of state court control over those issues. 42 U.S.C. § 247d-6d (b)(8).

"A federal forum is also important when substantial federal question[s] of great federal interest are presented, even when raised by a complaint framed in terms of state law, provided that resolution of the federal question is necessary to the resolution of the state-law claim." 1 Moore's Manual, Federal Practice & Procedure § 5.10 (2020).

Plaintiffs' claims are inextricably intertwined with Defendants' response to the directives and guidance from CDC and CMS. Resolution of these questions is of substantial importance to insure uniform application of federal law.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

## VI.   FEDERAL OFFICER JURISDICTION EXISTS

Removal is also proper under 28 U.S.C. § 1442(a)(1), which provides for removal when a defendant is sued for acts undertaken at the direction of a federal officer. "Unlike the general removal statute, the federal officer removal statute [Section 1442(a)] is to be 'broadly construed' in favor of a federal forum." *In re Commonwealth's Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 466 (3d Cir. 2015).

Removal is appropriate under § 1442(a)(1), when the removing defendant establishes that: (1) Defendants are persons; (2) Defendants were acting under the direction of a federal officer when it engaged in the allegedly tortious conduct; (3) There is causal nexus between the plaintiff's claims and the defendant's actions under federal direction; and (4) Defendants have raised a colorable defense based upon federal law. *Goncalves v. Rady Children's Hosp.*, 865 F.3d 1237, 1244 (9th Cir. 2017).

### A.   Acting Under the Direction of a Federal Officer

Prior to COVID-19, regulation of assisted living facilities was very general in nature. However, as a direct result of the COVID-19 pandemic, there was a clear and sudden paradigm shift as skilled nursing facilities were designated "critical infrastructure" by the federal government.[5] Since then, through the federal directives issued by the CDC, CMS, and the California Department of Public Health surveyors contracted by CMS, federal authorities have been explicitly guided operational decisions related to clinical pandemic response in skilled nursing facilities. Facilities were ordered to restrict visitation, cancel communal dining, and implement active screening and staff for fever and respiratory symptoms. *See* RFJN Ex. "10" to "28." Facilities were instructed on, amongst other things, which patients and staff to test for COVID-19, under what circumstances to use and how to conserve PPE, when to permit staff who had COVID-19 to return to work, how to mitigate staff shortages including when to permit COVID-

---

[5] https://files.covid19.ca.gov/pdf/EssentialCriticalInfrastructureWorkers.pdf

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

19 positive but asymptomatic staff to return to work, and how to handle the isolation of residents infected with COVID-19 and those under investigation for COVID-19. *Id.* These very detailed clinical directives and instructions represented a marked departure from the regulatory structure which existed before the pandemic. *See* Def's Notice of Removal, Dkt. #1, and RFJN Ex. "10" to "28".

Designating the activities of certain businesses as "critical infrastructure" enabled the federal government to enlist the aid of private parties to ensure the continued operation of any infrastructure "so vital to the United States that [its] incapacity or destruction … would have a debilitating impact on security, national economic security, national public health or safety, or any combination of those matters." 42 U.S.C. § 5195c(e). When the federal government instructs private parties on how to carry on their business during a national emergency it is enlisting those parties to carry out duty of the government itself to ensure the continued provision of "services critical to maintaining the national defense, continuity of government, economic prosperity, and quality of life in the United States." *Id*. § 5195c(b)(3).

The United States Supreme Court has held that the phrase "acting under" involves "an effort to *assist*, or help *carry out*, the duties or tasks of the federal superior." *Watson v. Philip Morris Cos*., 551 U.S. 142, 152 (2007); see also *In re Commonwealth's*, *supra*, at 457. The "acting under" requirement is broad and is also to be liberally construed. *Watson*, 551 US at 147. Federal courts "have explicitly rejected the notion that a defendant could only be 'acting under' a federal officer if the complained-of conduct was done at the specific behest of the federal officer or agency." *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 813 (3rd Cir. 2016). Detailed regulation to compel specific conduct satisfies the second requirement. *Winters v. Diamond Shamrock Chem. Co*., 149 F.3d 387 (5th Cir. 1998).

"[R]emoval by a 'person acting under' a federal officer must be predicated upon a showing that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations." *Cf.*

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

*Bakalis v. Crossland Savings Bank*, 781 F. Supp. 140, 144-145 (E.D.N.Y. 1991); *Ryan v. Dow Chemical Co*., 781 F. Supp. 934, 947 (E.D.N.Y. 1992); See *Fung v. Abex, Corp*., 816 F. Supp. 569, 572 (N.D. Cal. 1992). The "acting under" requirement is met when Defendant is acting pursuant to detailed and ongoing instructions from a federal officer. *Winters*, *supra*, 149 F.3d. 387 (5th Cir. 1998).

Defendants satisfy the first element for federal officer removal because, as part of the country's critical infrastructure, Silverado – Beverly Place (a RCFE facility with licensed healthcare workers) acted at all relevant times acted "to assist, or to help carry out, the duties or tasks of the federal superior," by helping the federal government "fulfill other basic governmental tasks" that otherwise "the Government itself would have had to perform," *Watson*, 551 U.S. at 153-54.

At the very beginning of the COVID-19 crisis in the United States, the federal government enlisted nursing facilities, including assisted living communities in its efforts to fulfill the government's task of ensuring that facilities such as Silverado – Beverly Place could assist in the safe transfer and admission of patients between healthcare facilities during an unprecedented national crisis. *Watson*, 551 U.S. at 153. In March 2020, it was reported that U.S. hospital beds were already maxed out (prior to COVID-19 hitting the hospitals) limiting healthcare facilities' ability to handle the "presumed" influx of COVID-19 patients.[6] These were and still are extraordinary times. Thus, once COVID-19 began to spread, the federal government declared that healthcare providers, such as Silverado - Beverly Place, were "critical infrastructure" businesses that were obligated to aid the federal government in preventing the spread of the virus: including by undertaking "covered countermeasures" during an unprecedented national emergency and to follow the federal government's direction and close supervision in doing so. RFJN

---

[6]  https://www.usnews.com/news/health-news/articles/2020-03-26/us-hospital-beds-were-already-maxed-out-before-coronavirus-pandemic

(footnote continued)

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

Ex. "10" to "28"; *see also* The President's Coronavirus Guidelines for America ("healthcare/public health" have a duty to "follow guidance from the CDC, as well as State and local government officials…".[7]

Moreover, during this time of crisis, there was a nationwide PPE shortage. FEMA worked hand-in-hand with businesses designated as "healthcare/public health" critical infrastructure to address the need for personal protective equipment and other critical supplies to continue operations in accordance with CDC guidance. Congress expressly approved and supported the pervasive new role of the federal government in overseeing the operation of "critical infrastructure" skilled assisted living communities by allocating additional funding to such healthcare providers under the CARES Act to accommodate critical ongoing operations in light of the pandemic.

Plaintiffs argue that *Dupervil v. Alliance Health Operations*, *LCC,* 20-CV-4042, 2021 WL 355137 (E.D.N.Y. Feb. 2, 2021) is outcome determinative with regards to this factor, s*ee* Dkt. #14 at 13, because a New York district court ruled that a defendant nursing home did not sufficiently evince a "special relationship" with a federal government agency sufficient to sustain federal officer jurisdiction. Dkt. #14 at 14. In *Dupervil* the court also noted in its opinion that Defendants merely asserted in their briefing that "they were 'acting under specific federal instructions/regulations since the [CMS] and [CDC] specifically compelled healthcare providers and nursing homes to respond to the COVID-19 pandemic." *Dupervil*¸ 2021 WL 355137 at *16. Here, Defendants similarly allege that the federal government has exerted far greater control and oversight over their operations since the onset of the COVID-19 pandemic, but also specifically argue that their operational activities during the pandemic were classified as "critical infrastructure," *see* fn. 6, *see* Ex. "A" to the Russo Declaration, and that Congress allocated additional funding to frontline healthcare providers via the CARES

---

[7]  https://www.cisa.gov/sites/default/files/publications/CISA-Guidance-on-Essential-Critical-Infrastructure-Workers-1-20-508c.pdf

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Act to provide additional resources to healthcare providers like Silverado – Beverly Place, in accordance with the CARES Act.

Given these facts, the analysis in *Fields v. Brown*, No. 6:20-cv-00475, 2021 WL 510620 (E.D. Tex. Feb. 11, 2021) is more persuasive. In pertinent part, the court in *Fields* held that a Tyson Foods meatpacking facility was "acting under" the direction of a federal officer because Tyson Foods "exhibited 'an effort to help assist, or carry out, the duties and tasks'" of the federal government by "working directly with the Department of Agriculture and the [Food Safety and Inspection Service] to guarantee that there was an adequate food supply" during the COVID-19 pandemic. *Id.* at *3 (citation omitted). In holding that federal officer removal was appropriate, and that the Tyson Foods meatpacking plant did in fact "act[] under" the direction of a federal officer in continuing its meatpacking operations, the court rejected plaintiffs' argument that Tyson Foods merely "communicated with federal regulators and that Tyson Foods was subject to federal regulation." *Id.* Rather, the court relied on the additional facts plead by Tyson as outcome determinative: *inter alia*, ". . .the critical-infrastructure designation. . ." of Tyson Foods' meatpacking plant, the fact that the "Department of Agriculture and the [Food Safety Inspection Service] closely monitored Tyson Food's meatpacking plants, staffing some employees onsite," and "Congress even allocated additional funding to [the Food Safety Inspection Service] to ensure that they had the resources to adequately supervise meatpacking plants like that one at issue. . ." *Id.*

Similarly, here, Silverado – Beverly Place was designated as "critical infrastructure," federally directed California Department of Public Health Employees "closely monitored" Silverado-Beverly Place, and Congress "even allocated additional funding" to frontline healthcare providers like Silverado – Beverly Place to ensure that state-licensed and certified assisted living facilities were supported in the ongoing battle against the COVID-19 pandemic. *See Id.* As such, and contrary to Plaintiffs' contentions, Defendants were "acting under" the direction of a federal officer in responding to the COVID-19 pandemic.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**B.      Causal Nexus Exists Between Plaintiffs' Claim and the Actions Taken by Defendants Pursuant to Federal Direction**

Defendants satisfy the "nexus" or "causation" requirement for federal officer jurisdiction, which requires that the alleged conduct have been undertaken "for or relating to" a federal office. To meet this requirement, "it is sufficient for there to be a connection or association between the act in question and the federal office." *In re Commonwealth's*, *supra*, at 790 F.3d at 471. There is a clear causal nexus between the claims against Defendants here and the actions taken by Defendants in responding to and administering care related to the COVID-19 outbreak. Plaintiffs' Complaint specifically alleges a deficiency in Defendants' actions concerning allocation, use, and administration of PPE, as well as infection control procedures implemented in an effort to prevent the transmission and spread of COVID-19 while simultaneously directing the critically needed resources required to enable a sufficient nationwide response to the virus. Dkt. #1-3, ¶¶3, 11-12, 65; Dkt. #14, p. 13.

On March 8, 2020, the CDC noted that with increased access to testing, the criteria for such testing was being expanded to include symptomatic individuals with chronic medical conditions, individuals over the age of 65, and individuals who were in close contact with a laboratory that had a confirmed positive COVID-19 patient. See RFJN Ex. "20". Defendants were following explicit guidance issued by the CDC with respect to the testing of its staff and residents, and, as such, were required to only test those individuals who met CDC criteria for doing so. On March 17, 2020, the CDC further directed facilities as to when and under what circumstances the use of a facemask or N95 respirator was proper, and further ordered facilities to conserve all types PPE otherwise used in the ordinary course of business in light of known and ongoing shortages. Defendants were required to follow these directives to the letter. *See* Ex. "A" to the Declaration of Jason Russo.

And again, on March 21 2020, the CDC stated that residents with known or suspected COVID-19 only required a private room with their own bathroom and not

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

23                                                    2:21-cv-00070-JAK(JPR)
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

1  isolation. As a "critical infrastructure" business, Silverado – Beverly Place was acting
2  under the explicit direction of the federal government in implementing its on-site
3  response to the COVID-19 pandemic.

4          **C.     Defendants Have a Colorable Defense Based On Federal Law**

5          For purposes of removal, defendants must present a colorable defense based on
6  federal law: the defense must only be "colorable," and need not be "clearly sustainable,"
7  as the purpose for the removal statute is to assure that the validity of the defense is tried
8  in federal court. *Willingham v. Morgan*, 395 U.S. 402, 407 (1969). "[O]ne of the most
9  important reasons for removal is to have the validity of the defense of official immunity
10 tried in a federal court;" for this reason, the Supreme Court has ". . . rejected a narrow,
11 grudging" approach when analyzing whether a defendant had raised a colorable federal
12 defense. *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999).

13         Defendants assert a federal defense in this case—namely, immunity under the
14 PREP Act for their administration and use of "covered countermeasures." In doing so,
15 Defendants satisfy the "colorable federal defense" element of the federal officer removal
16 statute. A defendant need only show it has a plausible federal defense. *Ruppel v. CBS*
17 *Corp.*, 701 F.3d 1176, 1182 (7th Cir. 2012). Here, Defendants are immunized under the
18 PREP Act for the conduct about which Plaintiffs complain. Silverado – Beverly Place
19 alleges its actions were justified by its compliance with federal directives and guidelines
20 aimed to protect employees from COVID-19 exposure, which serve as a complete defense
21 to any civil liability alleged. Defendants were complying with federal directives and
22 regulations issued by CMS, CDC and the CMS contracted California Department of
23 Public Health surveyors in responding to all aspects of the COVID-19 pandemic and have
24 raised a colorable defense on the basis of federal law. (*See* Ex. "A" to the Declaration of
25 Jason Russo.)

26 **VII.   DIVERSITY JURISDICTION EXISTS**

27         Plaintiffs also contest the propriety of diversity jurisdiction and argue that
28 complete diversity between Plaintiffs and Defendants in this case is lacking, alleging that

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Albert Sarnoff was a citizen of California at the time of his death and that Kenneth Sarnoff, despite being a citizen of North Carolina, should also be considered a citizen of California because he is acting as a "legal representative" on behalf of Albert Sarnoff. See Dkt. #14 at 8-10. Defendants have previously briefed the Court on various aspects of Plaintiffs' arguments, see Dkt. #1 at 3-8, and do not concede that Albert Sarnoff's citizenship at his time of death should be imputed to Kenneth Sarnoff and destroy complete diversity here.

Furthermore, there is no evidence before the court that Kenneth Sarnoff is the "legal representative" for the estate. A successor in interest is defined as the "beneficiary of the decedent's estate." Cal. Code Civ. P. § 337.11. Under California law, a beneficiary of a decedent's estate is defined by whether or not decedent had a will. If there is a will, the beneficiary of the decedent's estate is the sole or all beneficiaries designated in the will. Cal. Code Civ. P. § 377.10(a). If there is no will, the sole person or all persons who succeed to a cause of action as specified in California Probate Code sections 6401 and 6402 regarding intestate succession are the "beneficiaries" of the estate and thus a successor in interest. § 377.10 (b). As demonstrated in the complaint, Nancy Sarnoff is Albert Sarnoff's surviving wife and could be the sole beneficiary. There is no evidence that Albert Sarnoff had a will that included Kenneth Sarnoff as a beneficiary. There is no evidence that even without a will, Kenneth Sarnoff would be entitled to succeed to any of Albert Sarnoff's property. Thus, the conclusion that Kenneth Sarnoff is the legal representative for the estate lacks foundation and is insufficient to demonstrate citizenship.

Moreover, many courts have held that that the wrongful death plaintiff's residence controls where the state's wrongful death statute provides for a plaintiff whose recovery benefits others than exclusively the estate of the decedent. *See Steinlage ex rel Smith v. Mayo Clinic Rochester*, 435 F.3d 913 (8th Cir. 2006); *Tank v. Chronister*, 160 F. 3d 597, 599-600 (10th Cir.1998); *Milam v. State Farm Mut. Auto. Ins. Co*., 972 F.2d 166 (7th Cir.1992); *Winn v. Panola-Harrison Elec. Cooperative, Inc.*, 966 F.Supp.481, 483 (ED

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

25                                          2:21-cv-00070-JAK(JPR)
DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

Tex. 1997); *Webb v. Banquer*, 19 F. Supp.2d 649, 652-653 (S.D. Miss. 1998). Thus, the focus is on what the particular state's wrongful death statute allows. Here, California's wrongful death statute, Cal. Code Civ. P. § 377.60, provides for an independent cause of action by specified heirs whose recovery is individual and not to an estate. Accordingly, it is the residence of Kenneth Sarnoff and Douglas Sarnoff which should control because they are requesting relief for their own benefit. see Dkt. #1-3 at 22. Thus, Plaintiffs are not citizens of California like Defendants, and complete diversity exists for subject matter jurisdiction.

## VIII.  CONCLUSION

For all of the foregoing reasons, the Court should deny Plaintiffs' Motion and maintain Federal jurisdiction in this case.

DATED:  March 19, 2021                      LEWIS BRISBOIS BISGAARD & SMITH LLP


By:    */s/ Rita R. Kanno*
_____
Rima M. Badawiya
Lann G. McIntyre
Rita R. Kanno
Attorneys for Defendants
SILVERADO SENIOR LIVING, INC. AND
SILVERADO SENIOR LIVING MANAGEMENT,
INC., SUBTENANT 330 NORTH HAYWORTH
AVENUE, LLC, LOREN SHOOK And JASON
RUSSO

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES

1

2

**CERTIFICATE OF SERVICE**
*Albert Sarnoff, et al. v. Silverado Senior Living, Inc., et al.*
USDC-Central District, Western Division, Case No. 2:21-cv-00070-JAK(JPR)

3

STATE OF CALIFORNIA, COUNTY OF SAN DIEGO

4

5

6

At the time of service, I was over 18 years of age and not a party to the action. My business address is 550 West C Street, Suite 1700, San Diego, CA 92101. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

7

On March 19, 2021, I served the following document:

8

**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND; MEMORANDUM OF POINTS AND AUTHORITIES**

9

10

I served the document on the following persons at the following address (including a fax number and email addresses, if applicable):

11

12

13

14

| | |
|---|---|
| Jody C. Moore, Esq. <br> Gregory L. Johnson, Esq. <br> Joanna A Hutchins, Esq. <br> JOHNSON MOORE <br> 100 E. Thousand Oaks Blvd, Suite 229 <br> Thousand Oaks, CA  91360 <br> ***Attorneys for Plaintiffs*** | Tel:  805.988.3661 <br> Fax:  805.494.4777 <br> Email: jody@johnson-moore.com <br> gregory@johnson-moore.com <br> joanna@johnson-moore.com |

15

The document were served by the following means:

16

17

☒ **(BY COURT'S CM/ECF SYSTEM)** Pursuant to Local Rule, I electronically filed the document with the Clerk of the Court using the CM/ECF system.

18

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

19

20

Dated:  March 19, 2021

*/s/ Kathie Richmond*
Kathie Richmond

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW